UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DR. JOSEPH C. TALARICO; and
VICTOR SURGICAL CARE, PLLC,

                              Plaintiffs,              6:14-CV-1058
                                                       (GTS/ATB)
v.

EXCELLUS HEALTH PLAN, INC.,

                              Defendant.
_____

APPEARANCES:                                 OF COUNSEL:

WHATLEY KASSAS, LLP                          ILZE C. THIELMANN, ESQ.
  Counsel for Plaintiffs
1180 Avenue of the Americas, 20th Floor
New York, NY 10036

LOEB & LOEB LLP                              DANIEL A. PLATT, ESQ.
  Counsel for Defendant
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, CA 90067

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Employee Retirement Income Security Act ("ERISA")

action filed by Dr. Joseph C. Talarico and Victor Surgical Care, PLLC ("Plaintiffs") against

Excellus Health Plan, Inc. ("Defendant"), are Defendant's motion to dismiss Plaintiffs'

Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to

Fed. R. Civ. P. 12(b)(6), and (in the alternative) Defendant's motion for a more definite

statement, pursuant to Fed. R. Civ. P. 12(e).  (Dkt. No. 23.)  For the reasons set forth below,

Defendant's motion to dismiss is granted in part and denied in part, and its motion for a more

definite statement is denied.

I.    **RELEVANT BACKGROUND**

A.    **Plaintiff's Amended Complaint**

Generally, liberally construed, Plaintiffs' Amended Complaint alleges as follows.  (Dkt. No. 18.)  Plaintiff Dr. Joseph C. Talarico ("Plaintiff Talarico"), is an emergency care physician licensed in New York who has provided medical and surgical services to enrollees in Defendant's various health care plans.  (*Id.*, ¶ 22.)  Plaintiff Victor Surgical Care, PLLC ("Plaintiff Victor Surgical"), is a health care facility located in Victor, New York, and is owned by Plaintiff Talarico.[1]  (*Id.*, ¶ 23.)  Defendant is a New York corporation and is a plan administrator for both its ERISA plans and non-ERISA plans.  (*Id.*, ¶¶ 25-26.)  Defendant controls the distribution of funds and decides whether or not to grant benefits under both fully-insured and "administrative services only" ("ASO") ERISA plans.  (*Id.*, ¶ 27.)  Plaintiffs are out-of-network providers for Defendant's plans, meaning that Plaintiffs do not contract with Defendant and are not otherwise considered "participating providers."  (*Id.*, ¶ 32.)  As out-of-network providers, Plaintiffs do not have negotiated rates with Defendant, but are entitled to compensation according to patients' out-of-network benefits set forth in the terms of the patients' individual plans.  (*Id.*, ¶ 35.)

Plaintiffs bill for their services according to their fee schedule, which was developed based on historic payments for services, giving weight to expertise.  (*Id.*, ¶ 6.)  The rates on Plaintiffs' fee schedule are consistent with reimbursements that Plaintiffs receive from other commercial insurers for the same emergency services and are consistent with amounts charged for such services by other comparable providers in Plaintiffs' geographic region.  (*Id.*)  Plaintiffs

---

[1]        The Court notes that, on May 1, 2015, it was advised by Plaintiffs that Victor Surgical closed its business on May 31, 2015.  (Dkt. No. 41.)

typically request that their patients sign and return a standard assignment of benefits form ("AOB"), which includes an express assignment of payments, including those obtained through appeal, settlement, and/or litigation, of all health benefits as well as an assignment of the right to pursue civil remedies under ERISA and state law. (*Id.*, ¶¶ 37, 39-40.) Because Plaintiffs perform primarily emergency medical services, they do not generally obtain AOB forms at the time of treatment but wait until after surgery, often during a post-operative visit, to request a signed AOB form. (*Id.*, ¶ 37.)

Plaintiffs allege that they performed numerous medical procedures, surgeries, and other covered services for enrollees in Defendant's ERISA plans and non-ERISA plans during the period from 2013 through the present. (*Id.*, ¶ 31.) During the period from September 1, 2013, through December 1, 2014, Plaintiffs submitted claims with total charges in the amount of two-million, six-hundred and eight-thousand, three-hundred and seven dollars and ninety-two cents ($2,608,307.92). (*Id.*, ¶ 11.) Defendant paid these claims at extremely low rates, or denied them outright, in an amount totaling five-hundred and thirty-three thousand, seven-hundred and ninety-eight dollars and forty-nine cents ($533,798.49), which left an outstanding total balance of two-million, fifty-six thousand, four-hundred and seventeen dollars and forty-three cents ($2,056,417.43). (*Id.*) In addition to underpaying Plaintiffs, Defendant also took back an additional three-hundred and ten-thousand, eight-hundred and seven dollars and thirty-eight cents ($310,807.38) from the amount it did pay through its recoupment practices. (*Id.*)

Plaintiffs allege that they are entitled to full compensation for these services for two reasons: (1) Defendant is required to cover emergency services provided by out-of-network providers with the same cost to patients as there would be for emergency services provided by

in-network providers, and (2) Plaintiffs bill for services based on amounts that are consistent with reimbursements received from other insurers for these services. (*Id.*, ¶¶ 7-9.)

Based upon the foregoing factual allegations, the Amended Complaint sets forth the following eleven claims: (1) Defendant breached ERISA plan provisions by not paying submitted claims and/or making reduced payments, in violation of ERISA § 502(a)(1)(B); (2) Defendant, through its improper overpayment adjustments and recoupment determinations, violated ERISA § 502(a)(3); (3) Defendant failed to promptly and properly respond to claims in violation of ERISA § 503 and 29 C.F.R. § 2560-503.1; (4) Defendant breached its fiduciary duties of loyalty and due care in violation of ERISA § 404; (5) Defendant failed to provide a full and fair review of all claims that were under-reimbursed and/or denied, in violation of ERISA § 503; (6) breached its contract with Plaintiffs' patients; (7) Defendant breached its covenant of good faith and fair dealing; (8) Defendant is liable to Plaintiffs for unjust enrichment; (9) Defendant engaged in deceptive acts or practices in violation of N.Y. General Business Law § 349; (10) Defendant failed to make timely payments in violation of N.Y. Insurance Law § 3224-a; and (11) Defendant tortiously interfered with Plaintiffs' prospective economic advantage. (*Id.*, ¶¶ 106-234.)

### B.    Defendant's Motion to Dismiss

Defendant has moved to dismiss Plaintiffs' Amended Complaint for the following eight reasons: (1) Plaintiffs' ERISA claims fail for a lack of standing; (2) Counts Two, Four, and Five are duplicative of the other ERISA claims in the Amended Complaint and are adequately remedied by ERISA § 502(a)(1)(B); (3) Counts Three and Five do not allege that Defendant is the "Plan"; (4) Counts One through Three fail to state a plausible claim for relief under ERISA;

(5) Plaintiffs' state law claims, in Counts Six through Eleven, which relate to payment on behalf of enrollees in the Federal Employees Health Benefit Program ("FEHB"), are preempted by federal law; (6) Plaintiffs have failed to exhaust their administrative remedies with regard to their state law claims arising under Medicare plans; (7) Plaintiffs lack standing to assert Counts Six and Seven; and (8) Plaintiffs have failed to state a claim in Counts Six through Eleven. (Dkt. No. 23, Attach. 7, at 5-24 [Def.'s Mem. of Law].) In the alternative, Defendant requests the Court to Order Plaintiffs to provide a more definite statement in order to better distinguish patients who are participants in an ERISA plan and those who are not. (*Id.* at 24-25.)

## II.    RELEVANT LEGAL STANDARD

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34(1)(b) at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957),  that "a complaint should not be dismissed for failure to state a claim unless it appears

-6-

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561, 127 S. Ct. at 1968-69.  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 556-70, 127 S. Ct. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean the pleading must contain at least "some factual allegation[s]."  *Id*. at 555, 127 S. Ct. at 1965, n.3.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*. at 554, 127 S. Ct. at 1965.[2]

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit

---

[2]         It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007) (emphasis added).  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim.  *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, n.3 (citing *Conley*, 355 U.S. at 47) (emphasis added).  That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough facts set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.  *See Rusyniak,* 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully- harmed-me accusation." *Id*.

Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cty.*, 12-CV-0336, 2012 WL 1977972, at *5 (N.D.N.Y. June 1, 2012) (Suddaby, J.).

III.    ANALYSIS

   A.    **Whether Plaintiffs Lack Standing to Bring Their ERISA Claims**

   Defendant argues that Plaintiffs lack standing to bring their ERISA claims for the

following four reasons: (1) the insurance plans at issue contain anti-assignment provisions that

bar the patients from assigning their contractual rights to Plaintiffs; (2) even if the plans did not

prohibit such an assignment, Plaintiffs admit that, for 199 of the 444 claims, they were assigned

only the right to receive direct payments, not the right to file suit; (3) Plaintiffs admit that they

did not receive assignments for 176 of the claims; and (4) Defendant's direct payment to

Plaintiffs does not constitute a waiver or estoppel of the anti-assignment provisions.  (Dkt. No.

23, Attach. 7, at 5-8 [Def.'s Mem. of Law].)

   In opposition, Plaintiffs make the following five arguments.  First, Plaintiffs argue that

the assignments they received from their patients confers standing to bring their ERISA claims.

(Dkt. No. 24, at 1 [Pls.' Opp'n Mem. of Law].)

   Second, Plaintiffs argue that Defendant has waived enforcement of any anti-assignment

clauses for the following two reasons: (a) Defendant failed to assert any purported assignment

issues in its adverse benefit determinations, as required by 29 C.F.R. § 2560-503-1(g)(1); and (b)

Defendant, by making direct payments to Plaintiffs, allowing them to participate in the appeals

process, and, through its course of dealing with Plaintiffs, has waived its right to enforce any

anti-assignment provision.  (*Id.* at 2-5.)

   Third, Plaintiffs argue that Defendant should be equitably estopped from enforcing any

anti-assignment clause due to its extensive course of dealings with Plaintiffs, its failure to cite

the purported anti-assignment clauses in its benefit determinations, and Plaintiffs' reliance on

Defendant's apparent acceptance of the AOB forms without objection.  (*Id.* at 5-6.)

Fourth, Plaintiffs argue that, although a few of the assignments they received do not expressly assign more than their right to be paid directly, the scope of those assignments should not be narrowly construed so as to prohibit claims beyond the payment of benefits. (*Id.* at 6.) More specifically, Plaintiffs argue that, although the Second Circuit has not expressly ruled on this issue, the majority of other circuit courts have held that providers acquire ERISA standing even when assignments only expressly assign the right to be paid directly by the insurer. (*Id.* at 5-6.)

Fifth, and finally, Plaintiffs argue that, should the Court determine the existing AOBs are insufficient to confer standing upon them, they are entitled to obtain additional authorizations that would cure any such defects. (*Id.* at 7-8.) Similarly, Plaintiffs argue that they should be allowed to obtain post-filing assignments for the remaining claims for which they have not yet received assignments. (*Id.*)

In reply, Defendant makes the following five arguments. First, Defendant argues that it is well established that making direct payments to providers does not amount to waiver of anti-assignment provisions, and Plaintiffs have failed to cite any Second Circuit precedent to the contrary. (Dkt. No. 30, at 1 [Def.'s Reply Mem. of Law].)

Second, Defendant argues that the adjudication of an appeal submitted by a provider does not waive the right to enforce an anti-assignment provision, nor does it constitute a basis for estoppel. (*Id.* at 2.) Specifically, Defendant argues that it does not matter whether an ERISA plan provider raises an anti-assignment provision when they deny or reduce payment because the provision is not a factor in determining the payment amount. (*Id.*)

Third, Defendant argues that Plaintiffs have failed to demonstrate "extraordinary circumstances" that warrant application of equitable estoppel. (*Id.* at 3-4.)

Fourth, Defendant reiterates its argument that the plain language of 199 of the assignments assigns Plaintiffs only the right to receive direct payments, not the right to file suit. (*Id.* at 4.) Defendant argues that Plaintiffs have failed to cite any authority from this Circuit to the contrary. (*Id.* at 4-5.)

Fifth, and finally, Defendant argues that Plaintiffs have not refuted its argument that they failed to obtain assignments for 176 of their claims. (*Id.* at 5.) Furthermore, Defendant argues that, to the extent Plaintiffs allege that this number has changed based upon Dr. Talarico's affidavit (Dkt. No. 24, Attach. 1), that fact should be disregarded because it was not alleged in the Amended Complaint. (*Id.*) In addition, Defendant argues that case precedent precludes Plaintiffs from obtaining additional assignments to cure any standing defects because a party must have standing to sue at the time the complaint is filed. (*Id.*)

After carefully considering the matter, the Court agrees with Plaintiffs for the reasons stated in their opposition memorandum of law. (Dkt. No. 24, at 1-8 [Pls.' Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

## 1.    Whether the Anti-Assignment Provisions Are Enforceable

"It is well-established in this Circuit that 'the assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA.'" *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, 13-CV-6551, 2014 WL 4058321, at *3 (S.D.N.Y. Aug. 15, 2014) (quoting *I.V. Servs. of Am., Inc. v. Trs. of Am. Consulting Eng'rs Council Ins. Trust Fund*, 136 F.3d 114, 117 n.2 [2d Cir. 1998]). However, "where plan language unambiguously prohibits assignment, an attempted assignment will be ineffectual." *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351-52 (S.D.N.Y.

2013); *see also Mbody*, 2014 WL 4058321, at *3 (stating that "plaintiffs do not have standing to bring claims under ERISA plans that contain express anti-assignment provisions"); *accord*, *Lesser v. The Hartford*, 05-CV-3380, 2006 WL 1642946, at *2 (S.D.N.Y. June 13, 2006); *Renfrew Ctr. v. Blue Cross & Blue Shield of Cent. N.Y., Inc.*, 94-CV-1527, 1997 WL 204309, at *3-4 (N.D.N.Y. Apr. 10, 1997) (Pooler, J.). "Thus, a healthcare provider who has attempted to obtain an assignment in contravention of a plan's terms is not entitled to recover under ERISA." *Neuroaxis*, 919 F. Supp. 2d at 352.

"In determining whether contract language prohibits assignment to a healthcare provider, courts apply traditional principles of contract interpretation." *Id.* "The Second Circuit 'interpret[s] ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience.'" *Id.* (quoting *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 [2d Cir. 2004]). "Furthermore, because the Second Circuit applies 'rules of contract law to ERISA plans, a court must not rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous.'" *Id.* (quoting *Burke v. PriceWaterHouseCoopers LLP Term Disability Plan*, 572 F.3d 76, 81 [2d Cir. 2009]).

Here, Defendant has provided the language of the anti-assignment provisions contained in the various policies at issue. (Dkt. No. 23, Attachs. 1-6.) Because the Amended Complaint references these policies, the Court will consider them as incorporated by reference in the Amended Complaint, for purposes of Defendant's motion to dismiss for failure to state a claim. *See Borden v. Blue Cross & Blue Shield of W. New York*, 418 F. Supp. 2d 266, 273 (W.D.N.Y. 2006) (holding that, "[a]lthough Plaintiff did not attach a copy of the Plan to his Complaint, he references the Plan therein, and it is clearly essential to this Court's analysis. Accordingly, this

Court will consider the Plan . . . in rendering its decision on the instant motion to dismiss");

*Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 568 n.3 (S.D.N.Y. 2012) (holding that "[t]he

Court can properly consider the Plan and the Summary Plan Description on this motion to

dismiss because they are essential to the plaintiffs' ERISA claims and incorporated by reference

into their complaint"); *Steger v. Delta Airlines, Inc.*, 382 F. Supp. 2d 382, 385 (E.D.N.Y. 2005)

(holding that, "[b]ecause the Plan is directly referenced in the complaint and is the basis of this

action, the Court may consider the Plan in deciding the motion to dismiss"); *accord*, *Korman v.*

*Consol. Edison Co. of N.Y., Inc.*, 915 F. Supp. 2d 359, 363 (E.D.N.Y. 2013).

According to Defendant, the anti-assignment provision contained in the fully insured

commercial plans provides as follows:

> **No Assignment**.  You cannot assign any benefits or monies due
> under the Group Contract or this Certificate to any person,
> corporation or other organization.  Any assignment by you will be
> void.  Assignment means the transfer to another person or to an
> organization of your right to the services provided under this
> Certificate or your right to collect money from us for those
> services.

(Dkt. No. 23, Attach. 1, ¶ 3 [D'Ambrosio Aff.]; Dkt. No. 23, Attach. 7, at 4 [Def.'s Mem. of

Law]; Dkt. No. 23, Attach. 6, at 2 [Excellus Member Handbook].)[3]  Defendant argues that the

remaining plans are self-insured and contain similar anti-assignment provisions. (Dkt. No. 23,

Attach. 7, at 4 [Def.'s Mem. of Law].)[4]  Having carefully reviewed these provisions, the Court

---

[3]    Insurance benefits administered by Defendant to the University of Rochester contains an
anti-assignment provision that is substantially identical to the above-quoted provision. (Dkt. No. 23,
Attach. 4, at 2 [Pref. Provider Org. Benefits].)

[4]    The Health and Welfare Plan for Electrical Workers Local #86 provides as follows:

finds that they are clear and unambiguous and are therefore enforceable.

**2.      Whether Defendant Is Equitably Estopped from Enforcing the Anti-Assignment Provisions and/or Has Waived the Right to Enforce Those Provisions**

"Estoppel in ERISA cases, as in other cases, has three elements: (1) material representation, (2) reliance and (3) damage." *Neuroaxis*, 919 F. Supp. 2d at 355 (citing *Lee v. Burkhart*, 991 F.2d 1004, 1009 [2d Cir. 1993]). "[E]quitable estoppel is available on ERISA claims only in 'extraordinary circumstances.'" *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 109 (2d Cir. 2008). "To show extraordinary circumstances, 'a claimant must produce evidence of affirmative acts of fraud or similarly inequitable conduct by an employer, . . . misrepresentations that arise[ ] over an extended course of dealings between parties, . . . [or] the

---

2. <u>Assignment of Claim</u> You may not assign any rights or causes of action that you may have against any third-party without the express written consent of the Plan. The Trustees, in their sole discretion, may require you to assign your entire claim against the third party to this Plan. If this Plan recovers from the third party any amount in excess of the Benefits paid to you, plus the expenses incurred in making the recovery, then the excess will be paid to you.

(Dkt. No. 23, Attach. 5, at 2 [Health & Welfare Plan].)

The anti-assignment provision contained in the summary plan description for a Kinney Drugs Medical Plan provides as follows:

You may appoint someone to file a claim and act on your behalf; provided you give the Plan signed written notification of the appointment. In the case of an urgent claim, a health care professional with knowledge of your medical condition will be permitted to act as your representative.

(Dkt. No. 23, Attach. 3, at 2 [Kinney's Summ. Plan Desc.].)

Finally, the anti-assignment provision contained in a summary plan description for a Paychex, Inc., Employee Health Benefits Plan provides that "[c]overage may be assigned only with the written consent of Excellus BCBS." (Dkt. No. 23, Attach. 2, at 2 [Paychex Summ. Plan Desc.].)

vulnerability of particular plaintiffs.'" *In re Bidermann Indus. U.S.A., Inc.*, 241 B.R. 76, 90

(S.D.N.Y. 1999) (quoting *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of

Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 152 [3d Cir. 1999]); *see also Giordano v.

Coca-Cola Enters.*, 08-CV-0391, 2011 WL 839507, at *7 (E.D.N.Y. Mar. 7, 2011) (holding that

"[t]he facts demonstrating extraordinary circumstances must go beyond a simple showing of

reliance on a promise, harm and injustice, as would be required of any estoppel claim");

*Greifenberger v. Hartford Life Ins. Co.*, 131 F. App'x 756, 759 (2d Cir. 2005) (stating that "the

'extraordinary circumstances' necessary to equitable estoppel in the context of an ERISA plan

require conduct tantamount to fraud").

      "Waiver arises when a party has voluntarily or intentionally relinquished a known right."

*Hedspeth v. Citicorp Individual Bank Retirement Plan*, 93-CV-1471, 1993 WL 204808, at *18

(S.D.N.Y. June 7, 1993) (Sotomayor, J.); *see also Evcco Leasing Corp. v. Ace Trucking Co.*, 828

F.2d 188, 195 (3d Cir. 1987) (holding that "[i]t is well settled that waiver may be established by

conduct inconsistent with claiming the waived right or any action or failure to act evincing an

intent not to claim the right").  A number of decisions from outside of this Circuit have held that

insurance companies waive anti-assignment provisions when they treat healthcare providers as

valid recipients of assignments.  *See, e.g., Productive MD, LLC v. Aetna Health, Inc.*, 969 F.

Supp. 2d 901, 926 (M.D.Tenn. 2013) (finding plaintiffs had "alleged a plausible waiver theory"

where insurer's actions were inconsistent with its contractual right to contest assignments);

*Ambulatory Surgical Ctr. of N.J. v. Horizon Healthcare Servs., Inc.*, 07-CV-2538, 2008 WL

8874292, at *3 (D.N.J. Feb. 21, 2008) (holding that healthcare provider "has standing under

ERISA due to Horizon's waiver of its anti-assignment provision based on its course of dealings

with [plaintiff]"); *Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*,

06-CV-0462, 2007 WL 4570323, at *4 (D.N.J. Dec. 26, 2007) (stating that a "party may waive

an anti-assignment provision by a written instrument, a course of dealing, or even passive

conduct, i.e., taking no action to invalidate the assignment vis-a-vis the assignee"); *Lutheran*

*Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare*

*Plan*, 25 F.3d 616, 619-20 (8th Cir. 1994) (holding that, "[b]ecause the Plan's actual practice is

not in conformity with its strict anti-assignment provision, we conclude that nothing in the

contract precludes a finding that Lutheran and Henderson have standing as assignees"),

*abrogated on other grounds by Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966 (8th

Cir. 2002).

As discussed above, Plaintiffs argue that Defendant has waived its right to object to the

validity of any anti-assignment provision and/or should be equitably estopped from enforcing

such a provision based upon Defendant's extensive course of dealings with Plaintiffs.  With

respect to this conduct, Plaintiffs argue that the Amended Complaint alleges (1) that on

numerous occasions Defendant expressly stated that Plaintiffs had the right to appeal or respond

to Plaintiffs' appeals, (2) that Defendant sent hundreds of communications[5] to Plaintiffs or their

agents, which "are inconsistent with, and manifest a waiver of, the operation of any anti-

assignment clause," (3) that Defendant failed to cite the purported anti-assignment provisions in

their benefit determinations and represented that they recognized the assignments as valid, and

(4) Defendant made direct payments to Plaintiffs.  (Dkt. No. 24, at 4-6 [Pls.' Opp'n Mem. of

---

[5]        Plaintiffs have attached to their Amended Complaint a spreadsheet, which itemizes these
communications accompanied by a brief description of their contents.  (Dkt. No. 18, Attach. 2 [App.
"B"].)  The total number of communications listed on this spreadsheet is ninety-seven. (*Id.*)

Law]; Dkt. No. 18, ¶¶ 42-51 [Am. Compl.].)  In support of their argument, Plaintiffs cite a series

of cases from the United States District Court for the District of New Jersey.  *See Gregory*

*Surgical Servs., LLC*, 2007 WL 4570323, at *4 (holding that the complaint "describes regular

interaction between Horizon and GSS prior to and after claim forms are submitted, without

mention of Horizon's invocation of the anti-assignment clause.  Such claims impede Horizon's

ability to rely on the anti-assignment provision to challenge GSS's standing"); *Ambulatory*

*Surgical Ctr. of N.J.*, 2008 WL 8874292, at *3 (holding that "ASCNJ describes an extensive

course of dealings with Horizon that constitutes a waiver of the anti-assignment provision,"

including, "patient coverage discussions under health care policies, direct submission of claim

forms, direct reimbursement of medical costs, and engagement in appeal processes"); *accord*,

*Premier Health Ctr., P.C. v. UnitedHealth Grp.*, 11-CV-0425, 2012 1135608, at *10 (D.N.J.

Apr. 4, 2012); *Glen Ridge Surgicenter, LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 08-

CV-6160, 2009 WL 3233427, at *5 (D.N.J. Sept. 30, 2009); *Atl. Spinal Care v. Highmark Blue*

*Shield*, 13-CV-3159, 2013 WL 3354433, at *4 (D.N.J. July 2, 2013).

     In response, Defendant argues that courts in this Circuit have declined to hold that similar

instances of conduct warrant the application of the doctrines of equitable estoppel and/or waiver.

(Dkt. No. 30, at 1-4 [Def.'s Reply Mem. of Law].)  For example, Defendant argues that, with

regard to insurers that make direct payments to non-participating healthcare providers, the

Southern District has held that "[p]rior payments to healthcare providers do not create a 'viable

estoppel claim' . . . where ERISA plans unambiguously prohibit assignments." *Neuroaxis*, 919 F.

Supp. 2d at 355; *see also Renfrew Ctr.*, 1997 WL 204309, at *4 (finding the argument that an

anti-assignment clause was unenforceable because the insurer "retained the discretion to make

-17-

direct payment to non-participating providers" unavailing).  Finally, the Southern District has

considered waiver and estoppel arguments and found them to be unpersuasive:

> Plaintiffs argue that defendants waived the anti-assignment
> provisions by providing direct payment to plaintiffs or,
> alternatively, that defendants are estopped from raising this
> defense because it was not raised as a reason for denying or
> reducing payment.  Neither of these arguments has merit.  Health
> insurance companies routinely make direct payments to healthcare
> providers without waiving anti-assignment provisions . . . .
> Moreover, estoppel can only be applied in the ERISA context in
> "extraordinary circumstances" . . . . Here, plaintiffs do not allege
> any extraordinary circumstances.
>
> That defendants did not raise the anti-assignment provision at the
> time they denied or reduced payment is irrelevant because the anti-
> assignment provision was not a factor determining the payment
> amount.  Plaintiffs' argument is simply another way of re-arguing
> that defendants waived the anti-assignment provision by making
> direct payments to plaintiffs—an argument courts have repeatedly
> rejected.

*Mbody*, 2014 WL 4058321, at *3 (internal citations omitted).

Having carefully considered the matter, the Court agrees with Plaintiffs for the reasons

stated in their opposition memorandum of law and finds that they have alleged facts plausibly

suggesting that Defendant waived enforcement of the anti-assignment provisions through its

extensive course of dealings with Plaintiffs.  To those reasons, the Court adds the following two

points.

First, the Court finds that *Mbody* and *Neuroaxis* are distinguishable from the present

case.  Specifically, in both of those cases, plaintiffs argued that the anti-assignment provisions

should be deemed waived because defendants failed to cite the provisions when it denied or

reduced payments and/or because they made direct payments to plaintiffs.  *See Mbody*, 2014 WL

4058321, at *3; *Neuroaxis*, 919 F. Supp. 2d at 355-56.  As discussed above, Plaintiffs in the

-18-

present case have alleged a course of conduct that goes beyond merely failing to raise the anti-assignment provisions and/or making direct payments.  This conduct includes the following: (1) allowing "Plaintiffs, their billing service, and their attorneys to invoke appeals processes . . . without ever reserving any rights under an anti-assignment clause"; (2) communicating numerous times with Plaintiffs regarding grievances that they had filed, claims adjustments, dispute determinations, and stating that Plaintiffs had the right to appeal or respond to appeals; (3) communicating, through its own legal department, with Plaintiffs with regard to appealed claims that were submitted by Plaintiffs pursuant to AOBs; (4) making direct payments to Plaintiffs pursuant to AOBs; (5) authorizing and approving services from Plaintiffs that were also submitted pursuant to AOBs; and (6) treating Plaintiffs as the appropriate party from whom to seek repayments by withholding payments of benefits to Plaintiffs "in order to recover a purported prior overpayment of benefits on behalf of a separate and unrelated patient."  (Dkt. No. 18, ¶¶ 42-51 [Pls.' Am. Compl.].)  Taken together, the Court believes that these allegations plausibly suggest that Defendant waived enforcement of the anti-assignment provisions and go beyond the conduct that was alleged in both *Mbody* and *Neuroaxis*.

Second, Defendant appears to argue that it did not have an affirmative duty to cite the anti-assignment provisions in its adverse benefit determinations because it did not know that Plaintiffs were submitting claims as assignees of their patients or that the provisions were otherwise relevant in making payment determinations.  (Dkt. No. 30, at 1-2 [Def.'s Reply Mem. of Law].)  In *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 14-CV-2139, 2015 WL 1608991 (C.D.Cal. Apr. 10, 2015), the Central District of California considered a similar argument and noted the following:

-19-

> [t]here does seem to be a meaningful distinction between asserting the anti-assignment provisions for purposes of claims denial and asserting them in order to preclude standing for a suit. However, this distinction loses its salience if there has been activity undertaken in the pre-suit claims procedures that, irrespective of their relevance to the standing issue at present, should have triggered mention and/or invocation of these anti-assignment provisions. For example, if payments were made to Plaintiffs that could only have been made to assignees, this might suggest waiver of the argument that the plans on whose behalf these payments were made prohibit assignments.
>
> The question, therefore, becomes whether the pre-suit activity—during which the anti-assignment provisions were allegedly not mentioned—should have alerted [defendant] to the fact that Plaintiffs were operating as purported assignees, such that the failure to inform them that they could not do so means this argument might be deemed waived.

*Almont Ambulatory Surgery Ctr., LLC*, 2015 WL 1608991, at *25.

Here, the Amended Complaint alleges an extensive course of conduct between the parties that plausibly suggests that Defendant should have been aware that Plaintiffs were "operating as purported assignees." *Compare Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1297 (9th Cir. 2014) (holding that "there is no evidence that United was aware, or should have been aware, during the administrative process that Spinedex was acting as its patients' assignee" where plaintiffs could have been acting as authorized representatives of their patients, rather than assignees) *with Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 575 (5th Cir. 1992) (holding that the plan was "estopped to assert the anti-assignment clause . . . because of its protracted failure to assert the clause when [the provider] requested payment pursuant to a clear and unambiguous assignment").

Moreover, the Amended Complaint alleges that Defendant expressly informed Plaintiffs that some of their claims were being withheld because Defendant had instead paid the patients

-20-

directly.  (Dkt. No. 18, ¶¶ 11-13 [Am. Compl.].)  Similarly, the Amended Complaint alleges that Defendant engaged in a recoupment of payments previously made to Plaintiffs that *should have been made* to patients pursuant to Defendant's contract with Plaintiffs' patients.  (*Id.*, ¶ 15.) These allegations plausibly suggest that Defendant took these actions pursuant to the anti-assignment provisions.  Therefore, if true, Defendant would have been making claim and payment determinations based, in part, upon the anti-assignment provisions.

Finally, compounding this issue are the allegations that Defendant did not provide any reasons for their claim denials in the adverse benefit determinations or provide any information that was requested by Plaintiffs, including plan documents.  (*Id.*, ¶¶ 86, 94-98.)  The Ninth Circuit has held that "an administrator may not hold in reserve a known or reasonably knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court." *Spinedex*, 770 F.3d at 1296; *accord*, *Harlick v. Blue Shield of California*, 686 F.3d 699, 720 (9th Cir. 2012).  Certainly, the existence of the anti-assignment provisions was "reasonably knowable," and, given the allegations regarding the course of conduct between the parties, Defendant should have been aware that Plaintiffs were submitting claims as assignees.

### 3.    Whether the Assignments Obtained by Plaintiffs Confer the Right to Bring Suit

According to the Amended Complaint, the AOB forms executed by Plaintiffs' patients contain the following language: "I hereby assign all applicable health insurance benefits and all rights and obligations that I and my dependents have under my health plan to the Provider," and expressly authorizes Plaintiffs to "[f]ile medical claims with the health plan . . . [f]ile appeals and grievances with the health plans . . . and [i]nstitute [any] necessary litigation and/or complaints

against my health plan . . . ."  (Dkt. No. 18, ¶ 40 [Am. Compl.].)  However, Defendant argues

that, for 199 of the purported assignments, Plaintiffs had their patients execute AOB forms

containing different language, which does not confer the right to file suit.  (Dkt. No. 23, Attach.

7, at 7 [Def.'s Mem. of Law]; Dkt. No. 30, at 4-5 [Def.'s Reply Mem. of Law].)  Indeed,

Appendix A to the Amended Complaint confirms that certain patients executed AOB forms

containing the following language: "I, the below named subscriber, hereby authorize payment

directly to any physician examining or treating me of any group and/or individual surgical and/or

medical benefits herein specified, and otherwise payable to me for their services . . . . I hereby

certify all insurance pertaining to treatment shall be assigned to the physician/group treating

me." (Dkt. No. 18, Attach. 1, at 14 [App. "A" to Am. Compl.].)  Plaintiffs do not dispute that

certain patients executed the latter assignments, which do not expressly assign more than the

right to be paid directly.  (Dkt. No. 24, at 6 [Pls.' Opp'n Mem. of Law].)  Plaintiffs argue,

however, that the latter assignments should not be narrowly construed and they should be found

to allow Plaintiffs to file an action under ERISA § 502(a).

It does not appear that courts within the Second Circuit have had an opportunity to

consider this issue.  However, "[e]very United States Court of Appeals to have considered this

question has found . . . that an assignment of benefits is sufficient to confer ERISA standing."

*North Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 373 (3d Cir. 2015) (collecting

cases).  In *North Jersey*, the Third Circuit recently held that, "as a matter of federal common law,

when a patient assigns payment of insurance benefits to a healthcare provider, that provider

gains standing to sue for that payment under ERISA § 502(a).  An assignment of the right to

payment logically entails the right to sue for non-payment." *North Jersey Brain & Spine Ctr.*,

801 F.3d at 372.  In reaching this conclusion, the Third Circuit reasoned, in part, that

> [t]he value of such assignments lies in the fact that providers, confident in their right to reimbursement and ability to enforce that right against insurers, can treat patients without demanding they prove their ability to pay up front.  Patients increase their access to healthcare and transfer responsibility for litigating unpaid claims to the provider, which will ordinarily be better positioned to pursue those claims . . . . These advantages would be lost if an assignment of payment of benefits did not implicitly confer standing to sue.

*Id.* at 373-74.  The court also noted the importance of judicial uniformity regarding this issue. Specifically, the court stated that "[i]t is a significant advantage for ERISA-plan participants if basic rules governing assignments and standing to sue do not change when they cross circuit lines." *Id.* at 374; *see also Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 16 (2d Cir. 1993) (noting that "[t]here is a strong interest in uniform, uncomplicated administration of ERISA plans").

Lacking clear guidance from the Second Circuit with respect to this issue, this Court is persuaded by the Third Circuit's reasoning and finds that the assignments obtained by Plaintiffs confer standing to file suit for payment under ERISA § 502(a)(1).

### 4.    Whether Plaintiffs Have Standing to Bring Suit for Claims for Which They Have Not Yet Obtained Assignments

In their Amended Complaint, Plaintiffs expressly admit that they have not yet obtained executed AOB forms from all of their patients but have nonetheless included those claims in the present action.  More specifically, the Amended Complaint alleges,

> Those patients who did not have follow-up visits with Plaintiffs and thus have not yet signed AOBs have been asked to execute AOBs expressly assigning all of their benefits and the right to appeal and to purse adverse determinations of those benefits, including through litigation, to Plaintiffs, and execution of those AOBs is pending, as reflected in Appendix A.  Plaintiffs will

-23-

> update the information contained in Appendix A, including the
> additional executed AOBs received from their patients, through
> their initial disclosures to Defendant.

(Dkt. No. 18, ¶ 39 [Pls.' Am. Compl.].)

Courts that have considered whether a post-commencement assignment is permissible

have reached differing conclusions. *See, e.g.*, *Briglia v. Horizon Healthcare Servs., Inc.*, 03-CV-

6033, 2008 WL 934412, at *1-2 (D.N.J. Mar. 31, 2008) (holding that healthcare provider could

pursue claims assigned to him after commencing suit because he had litigated all aspects of his

claims and obtained an assignment before trial and "Defendants have not provided any evidence

that they would be prejudiced from a recognition of the assignment at this time"); *Infodek, Inc. v.

Meredith-Webb Printing Co., Inc.*, 830 F. Supp. 614, 620 (N.D.Ga. 1993) (holding that "an

assignment of interest should be recognized provided the assignment occurs before trial, the

plaintiff is a real party in interest in at least one other claim, and the defendant suffers no

prejudice from its recognition"); *accord*, *Dubuque Stone Prods. Co. v. Fred L. Gray Co.*, 356

F.2d 718, 723-24 (8th Cir. 1966); *Kilbourn v. W.  Co.*, 187 F.2d 567, 571 (10th Cir. 1951);

*Campus Sweater & Sportswear Co. v. M.B. Kahn Constr. Co.*, 515 F. Supp. 64, 84 (D.S.C.

1979); *Lambrinos v. Exxon Mobil Corp.*, 349 F. App'x 613, 614 (2d Cir. 2009) (summary order);

*but see, e.g.*, *Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Texas, Inc.*, 16 F. Supp.

3d 767, 776 (S.D.Tex. 2014) (holding that a healthcare provider could not pursue ERISA claims

assigned to him after suit was already commenced because "a party . . . must have standing at the

time the complaint was filed in order to sue").

In a recent decision, the Second Circuit noted that

> [w]e have apparently never, in a precedential opinion, adopted a
> rule to the effect "that even when [a] claim is not assigned until

-24-

> after [an] action has been instituted, the assignee is the real party in
> interest and can maintain the action" . . . . The "rule" apparently
> predates adoption of [Fed. R. Civ. P.] 17(a)(3), but modern courts
> sometimes support their approval of such post-commencement
> assignment by reference to Rule 17(a) . . . . We need not determine
> under what circumstances, if ever, a post-commencement
> assignment might be appropriate under 17(a)(3) or some other
> provision of the Federal Rules, although we note that [*Advanced
> Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir.
> 1997)] suggests that 17(a)(3) alone would not authorize such an
> assignment under these circumstances.

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 425 n.8 (2d Cir. 2015)

(quoting 6A Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1545 [3d ed.2014]).  This does

not mean that the Second Circuit would reject a post-commencement assignment.  *See Cortlandt*

*St.*, 790 F.3d at 426 (Sack, J., concurring) (noting that "the jurisdiction-at-commencement rule is

not absolute" and that, "[i]n some cases, a jurisdictional defect existing at the outset of litigation

*can* be cured by subsequent events").

    Where courts in this Circuit have used Fed. R. Civ. P. 17(a)(3) to remedy defects in

standing, they have generally done so where the plaintiff had standing on another claim that it

brought.  *Clarex Ltd. v. Natixis Sec. Am. LLC*, 12-CV-0722, 2012 WL 4849146, at *8 (S.D.N.Y.

Oct. 12, 2012); *accord*, *Cortlandt St.*, 790 F.3d at 422; *cf. Digizip.com, Inc. v. Verizon Servs.*

*Corp.*, 14-CV-1741, 2015 WL 6076532, at *5 (S.D.N.Y. Oct. 16, 2015) (noting that, "if a party

has standing as to one claim, there is no reason why that fact should affect the analysis of

standing as to a different claim").  Having determined that the anti-assignment provisions do not

bar the claims Plaintiffs have obtained valid assignments for, Plaintiffs appear to have satisfied

the three requirements for Article III standing.[6]

Finally, allowing Plaintiffs to obtain post-commencement assignments does not appear to run afoul of the three policy interests discussed in *Advanced Magnetics* and *Cortlandt St.* Specifically, "the factual and legal allegations of the complaint would remain unaltered" if the suit continues. *Cortland St.*, 790 F.3d at 422. Second, there is no indication of "bad faith or . . . an effort to deceive or prejudice the defendants." *Advanced Magnetics*, 106 F.3d at 21. Finally, obtaining post-commencement assignments does not "threaten to prejudice the defendants, who had timely notice of the substance of the allegations, the relevant parties, and their claims." *Cortlandt St.*, 790 F.3d at 422. Indeed, Defendant has not provided any reasons regarding prejudice that may result if post-commencement assignments are recognized.

Accordingly, the Court will not dismiss the claims that Plaintiffs have yet to obtain assignments for at this time. However, Plaintiffs must obtain valid assignments for these claims within forty-five (45) days of the date of this Decision and Order.

**B.      Whether Counts Two, Four, and Five Are Duplicative of Plaintiffs' Other ERISA Claims**

As discussed in Point I.A. of this Decision and Order, Count Two of the Amended Complaint alleges that, Defendant, through its improper overpayment adjustments and recoupment determinations, violated ERISA § 502(a)(3); and the Amended Complaint seeks the return of funds allegedly recouped and declaratory relief. (Dkt. No. 18, ¶¶ 122-126 [Pls.' Am. Compl.].) Count Four alleges that Defendant breached its fiduciary duties of loyalty and due

---

[6]      Specifically, Plaintiffs have alleged that they "suffered an injury in fact"—that is, they provided medical services without receiving due compensation. Second, that injury was the direct result of Defendant's conduct—that is, Defendant has unjustly underpaid, recouped, or denied insurance claims submitted by Plaintiffs. Finally, providing adequate compensation for Plaintiffs' medical services would redress their alleged injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

care, in violation of ERISA § 404.  (*Id.*, ¶¶ 150-161.)  Finally, Count Five alleges that Defendant failed to provide a full and fair review of all claims that were under-reimbursed and/or denied, pursuant to ERISA § 503.  (*Id.*, ¶¶ 162-173.)

Defendant argues that Plaintiffs' request for equitable relief under these causes of action are duplicative of Counts One and Three and are adequately remedied by monetary damages pursuant to ERISA § 502(a)(1)(B). (Dkt. No. 23, Attach. 7, at 9-11 [Def.'s Mem. of Law].)

In opposition, Plaintiffs make the following two arguments.  First, Plaintiffs argue that the Amended Complaint requests the following injunctive relief: (a) an Order "enjoining Defendant from falsely stating to Plaintiffs' patients that Plaintiffs have been paid on claims where Defendant has subsequently recovered, recouped, 'adjusted' or otherwise taken back payments on previously paid claims"; and (b) an Order "requiring Defendant to provide Plaintiffs with a full, line-by-line accounting of all claims submitted by Plaintiffs to Excellus." (Dkt. No. 24, at 8-9 [Pls.' Opp'n Mem. of Law].)  According to Plaintiffs, this relief is not available under other provisions of ERISA.  (*Id.* at 9.)

Second, Plaintiffs argue that, under Second Circuit precedent, both a claim under ERISA § 502(a)(1)(B) and a claim for breach of fiduciary duty under ERISA § 502(a)(3) may be brought simultaneously so long as the plaintiff seeks "appropriate equitable relief" in their fiduciary duty claim that cannot be adequately addressed by the relief available under § 502(a)(1)(B).  (*Id.*) (citing *Frommert v. Conkright*, 433 F.3d 254, 272 [2d Cir. 2006]).

In reply, Defendant argues that Plaintiffs have failed to identify any allegations demonstrating how Counts Two, Four, and Five are not duplicative of their claims under § 502(a)(1)(B).  (Dkt. No. 30, at 5 [Def.'s Reply Mem. of Law].)

After carefully considering the matter, the Court agrees with Plaintiffs for the reasons stated in their opposition memorandum of law. (Dkt. No. 24, at 8-9 [Pls.' Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

Section 502(a)(3) provides that a civil action may be brought by a beneficiary of an ERISA plan "(a) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (b) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Supreme Court has explained that ERISA § 502(a)(3) functions "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp v. Howe*, 516 U.S. 489, 512 (1996). Where § 502 otherwise provides adequate relief for an injury, there "will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Varity Corp.*, 516 U.S. at 515; *see also Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 737 (S.D.N.Y. 2011) (noting that "Second Circuit cases have made clear that *Varity* did not eliminate the possibility of a plaintiff successfully asserting a claim under both ERISA § 502[a][1][B] and ERISA § 502[a][3], but rather indicated that equitable relief under § 502[a][3] would not 'normally' be appropriate"). "In other words, it is 'appropriate' to allow plaintiffs to include a § 502(a)(3) claim which may provide distinct relief from a § 502(a)(1) claim; it is inappropriate to include a § 502(a)(3) claim which . . . merely duplicates the § 502(a)(1) claim." *Mead v. Anderson*, 309 F. Supp. 2d 596, 598 (S.D.N.Y. 2004).

However, "[a]t the pleading stage, it is not for the Court to determine whether there is some set of facts that will permit or preclude recovery under § 502(a)(1)(B), but will make out a

breach of fiduciary duty claim under § 502(a)(3)." *Am. Med. Ass'n v. United Healthcare Corp.*, 00-CV-2800, 2002 WL 31413668, at *7 (S.D.N.Y. Oct. 23, 2002). "Even if the claims are duplicative, no binding authority has held that a plaintiff cannot plead both claims." *Commc'ns Workers of Am., AFL-CIO v. Nynex Corp.*, 93-CV-3322, 1998 WL 85323, at *1 (S.D.N.Y. Feb. 26, 1998). Indeed, Defendant cites *N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*, 980 F. Supp. 2d 527, 540 (S.D.N.Y. 2013), in support of its motion that § 502(a)(1)(B) provides Plaintiffs with adequate monetary relief. However, the Second Circuit recently overturned that decision, holding that,

> [h]ere, [plaintiff's] § 502(a)(3) claims are for breach of fiduciary duty, he has not yet succeeded on his § 502(a)(1)(B) claim, and it is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under § 502(a)(1)(B) alone will provide him a sufficient remedy. In other words, it is too early to tell if his claims under § 502(a)(3) are in effect repackaged claims under § 501(a)(1)(B).

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015).

The Court finds that the same holds true in the present case. Therefore, "[a]t this point in the proceedings, plaintiffs are entitled to proceed under both ERISA theories." *Am. Med. Ass'n*, 2002 WL 31413668, at *7; *see also Suozzo v, Bergreen*, 00-CV-9649, 2002 WL 1402316, at *5 (S.D.N.Y. June 27, 2002) (denying motion to dismiss § 502(a)(3) claim for "appropriate equitable relief" and allowing it and § 502(a)(1)(B) claims "to proceed in tandem at this stage"); *Chapro v. SSR Realty Advisors, Inc. Severance Plan*, 351 F. Supp. 2d 152, 156 (S.D.N.Y. 2004) (refusing to dismiss § 502(a)(3) claim as duplicative of § 502(a)(1) claim "at [motion to dismiss] stage of the case").

C.    **Whether Defendant, as a Plan Administrator, Can Be Found Liable for Violations Under ERISA § 503, as Alleged in Counts Three and Five of the Amended Complaint**

Defendant argues that ERISA § 503 claims may be brought only against the "plan" because § 503 imposes obligations on the plan only and not the plan administrator. (Dkt. No. 23, Attach. 7, at 11 [Def.'s Mem. of Law].) According to Defendant, Counts Three and Five should be dismissed because Plaintiffs have failed to allege that Defendant is the "plan," and § 503 does not impose obligations on the plan administrator. (*Id.* at 11-12.)

In opposition, Plaintiffs argue that, in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830-31 (2003), and *Juliano v. Health Maint. Org. of New Jersey, Inc.*, 221 F.3d 279, 288 (2d Cir. 2000), both the Supreme Court and Second Circuit held that the full-and-fair review requirement of § 503 imposes a burden of explanation on plan administrators. (Dkt. No. 24, at 10-11 [Pls.' Opp'n Mem. of Law].) Therefore, according to Plaintiffs, Excellus is a proper defendant in a § 503 claim for failure to provide a full-and-fair review. (*Id.*)

In reply, Defendant reiterates its argument that Plaintiffs have failed to allege that it is the "plan." (Dkt. No. 30, at 6 [Def.'s Reply Mem. of Law].) In addition, Defendant argues that Plaintiffs rely on out-of-context quotes in the cases they have cited where courts refer to requirements for plan administrators. (*Id.*)

After carefully considering the matter, the Court agrees with Defendant for the reasons stated in its memorandum of law. (Dkt. No. 23, Attach. 7, at 11 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Contrary to Plaintiffs' contentions, "the Second Circuit has not addressed the issue of whether civil penalties are available for violations of 29 C.F.R. § 2560.503-1 . . . ." *Halo v. Yale*

*Health Plan*, 49 F. Supp. 3d 240, 268 (D. Conn. 2014). However, "several other circuits have held that the civil penalties provided under 29 U.S.C. § 1132(c) apply only to violations of a duty imposed by the ERISA statute and not a duty imposed by regulations promulgated thereunder." *Halo*, 49 F. Supp. 3d at 268 (citing *Wilczynski v. Lumbermens Mut. Casualty Co.*, 93 F.3d 397 [7th Cir. 1996] [holding that § 1132 penalties can be assessed only for conduct that breaches an administrator's duty of disclosure created by ERISA subchapter I and that "violations of regulations promulgated thereunder will not suffice"]; *Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 147 [3d Cir. 2007] [noting that the Third Circuit has previously "held that the defendants' failure to provide information required by federal regulations did not state a claim under ERISA § [1132](c)(1)" and that "[§ 1132(c)] subjects plan administrators to liability only for failure or refusal to release the information that Subchapter I of ERISA" requires]; *see also Stuhlreyer v. Armco, Inc.*, 12 F.3d 75, 79 (6th Cir. 1993) (holding that "a plan administrator cannot violate § 1133 and thus potentially incur liability under § 1132[c], because § 1133 imposes obligations on the 'plan' rather than the 'plan administrator'").

"Moreover, several district courts in the Second Circuit have held that § 1132(c) penalties do not apply to violations of agency regulations, and, in particular, have found that § 1132(c) penalties are not available for purported violations of 29 C.F.R. § 2560.503-1." *Halo*, 49 F. Supp. 3d at 268 (citing cases); *see also Gates v. United Health Grp. Inc.*, 2012 WL 2953050, at *11 (S.D.N.Y. July 16, 2012) (noting that "[n]umerous courts have ruled that [29 U.S.C. § 1133] does not create liability for administrators, including claims administrators").[7]  Indeed, in

---

[7]      The Court notes that, in *Halo*, the United States District Court for the District of Connecticut declined to follow the majority of district courts in this Circuit regarding this issue. *Halo*, 49 F. Supp. 3d at 269. In so doing, the court adopted the reasoning of "a few courts" from outside of this Circuit, which is as follows:

*Anderson v. Sotheby's Inc. Severance Plan*, 04-CV-8180, 2005 WL 1309056 (S.D.N.Y. May 31,

2005), the court agreed with the Third and Seventh Circuits that statutory penalties may not be

assessed against the plan administrator under 29 U.S.C. § 1132(c)(1) for violations of ERISA's

implementing regulations.  *Anderson*, 2005 WL 1309056, at *3; *see Wilczynski*, 93 F.3d at 406

(holding that, "section 1133, on its face, establishes requirements for plans, not plan

administrators"); *Groves v. Modified Retirement Plan*, 803 F.2d 109, 110 (3d Cir. 1986) ("[W]e

hold that failure to perform duties imposed by ERISA § 503 and subsection (g), requiring

disclosure of medical records, do not render a plan administrator liable to § 502(c) sanctions

because both § 503 and subsection (g) impose duties expressly and exclusively on 'the plan,' not

upon the 'plan administrator.'").

The Court adopts this position.  Because Defendant, as a plan administrator, cannot be

found liable under ERISA § 503, Plaintiffs' claims under Counts Three and Five of the Amended

Complaint are dismissed.

---

(i) while § 1133 refers only to plans and not plan administrators, the
corresponding regulations (29 C.F.R. § 2560.503-1 *et seq.*) specifically
address plan administrators; (ii) failure to provide adequate information
in response to a claim for benefits constitutes a failure to provide
information that is "required" under § 1132(c) of ERISA; and (iii) the
civil penalty imposed by § 1132 is remedial, rather than penal.

*Id.*  Despite this reasoning, this Court agrees with the courts that have found the obligations of § 1133 are
imposed only on the benefit "plan" based upon a plain reading of the statute.

**D.     Whether Counts One and Two Fail to State a Claim for Relief Under ERISA**[8]

**1.     Count One**

As discussed above in Point I.A. of this Decision and Order, Count One of the Amended Complaint alleges that Defendant wrongfully denied benefits covered by the plans in violation of ERISA § 502(a)(1)(B).  (Dkt. No. 18, ¶¶ 106-121 [Pls.' Am. Compl.].)  Defendant argues that this claim should be dismissed because Plaintiffs have not identified a single policy or plan they are seeking to enforce, and rely on conclusory allegations regarding purported violations of undisclosed ERISA plans.  (Dkt. No. 23, Attach. 7, at 12-14 [Def.'s Mem. of Law].)  In support of this argument, Defendant cites *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587 (N.D. Tex. 2014), where the court found a schedule containing 999 claims, which was attached to the complaint, did not meet the plausibility requirement without additional factual assertions regarding the plans' terms.  (*Id.* at 13 [citing *Innova*, 995 F. Supp. 2d at 601-02].)

In opposition, Plaintiffs make the following three arguments.  First, Plaintiffs argue that Defendant admits, in its memorandum of law, that it has sufficient information regarding the plans to identify them.  (Dkt. No. 24, at 11-12 [Pls.' Opp'n Mem. of Law].)  Specifically, Plaintiffs cite an earlier portion of Defendant's memorandum of law, which states that, "[a]lthough the AC does not allege the plans or policies at issue, Defendant is able to ascertain the plans based on the policy number contained in Appendix A." (*Id.*)  According to Plaintiffs, all that is required to satisfy the liberal pleading standard under *Twombly* and *Iqbal* is to give the

---

[8]     Defendant has also moved to dismiss Count Three on the basis that it fails to state a plausible claim for relief under ERISA.  (Dkt. No. 23, Attach. 7, at 16-17 [Def.'s Mem. of Law].) However, in light of the Court's determination in the preceding section that Count Three is dismissed, the Court need not consider that argument.

defendant fair notice of what the claim is and the grounds up which it rests.  (*Id.* at 12.)  Because Appendix A is incorporated into the Amended Complaint, Plaintiffs argue that the Amended Complaint adequately alleges the plans and their terms.  (*Id.*)

Second, Plaintiffs argue that any inability to offer more specificity regarding plan terms is the result of Defendant's having withheld such information.  (*Id.*)  Plaintiffs note that the Amended Complaint alleges that Defendant has withheld information, such as Summary Plan documents, which would have enabled them to be more specific in their allegations.  (*Id.*)

Third, Plaintiffs argue that the Amended Complaint sufficiently alleges what was required under the plans, how Defendant failed to meet those requirements, and the benefits to which Plaintiffs are entitled.  (*Id.* at 13-14.)

In reply, Defendant reiterates its argument that Plaintiffs have failed to identify a single plan provision that it allegedly violated.  (Dkt. No. 30, at 6 [Def.'s Reply Mem. of Law].)

After carefully considering the matter, the Court agrees with Plaintiffs for the reasons stated in their opposition memorandum of law.  (Dkt. No. 24, at 11-15 [Pls.' Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

ERISA § 502(a)(1)(B) allows for recovery of benefits due "under the terms of [an ERISA] plan."  29 U.S.C. § 1132(a)(1)(B).  "To state a claim under that section, a plaintiff must allege facts that establish the existence of an ERISA plan as well as the provisions of the plan that entitle it to benefits."  *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 10-CV-4911, 2011 WL 2748724, at *5 (N.D. Ca. July 13, 2011).  "A plan is established if a reasonable person 'can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Forest Ambulatory*, 2011 WL 2748724, at *5 (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 [11th Cir. 1982]).

Defendant cites *Innova* in support of its argument that Plaintiffs have failed to sufficiently plead facts that identify a plan or policy upon which their claims are based.  In *Innova*, however, the plaintiff alleged generally, in connection with both ERISA and non-ERISA plans, that the defendant failed to make payments of benefits as required under the terms of the plans.  *Innova*, 995 F.Supp. 2d at 603.  With respect to the plaintiff's breach of contract claim, the plaintiff relied exclusively on a spreadsheet to provide the terms of the plans at issue.  *Id.* at 604.  The court in that case noted that the spreadsheet failed to identify the non-ERISA contracts and, more importantly, contained "no factual allegations regarding what rates were 'contractually agreed upon' or 'required by the contracts .'" *Id.*  The court dismissed the breach of contract claim because the plaintiff failed to allege any specific plan terms that conferred the benefits it was seeking to recover, not because the plaintiff did not identify specifically which claims were based on employer sponsored ERISA plans and which were breach of contract claims based on private plans.  *Id.*

Here, the Court agrees with Plaintiffs that the allegations contained in the Amended Complaint (as summarized in Plaintiffs' opposition memorandum of law [Dkt. No. 24, at 12-14]), coupled with the claims schedule in Appendix A to the Amended Complaint, provides fair notice of Plaintiffs' claims and the grounds upon which they rest.  *See Connecticut Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP*, 14-CV-1859, 2015 WL 5122269, at *6 (D. Conn. Aug. 31, 2015) (holding that, where "the amended complaint states that all plans were subject to the above cost-sharing obligations" it was "unnecessary for [plaintiff] to attach all three hundred fifteen plans to the complaint, as doing so could contradict Rule 8's requirement that the complaint provide a short and plain statement of the claim"); *Grand Parkway Surgery Ctr., LLC*

*v. Health Care Serv. Corp.*, 15-CV-0297, 2015 WL 3756492, at *4 (S.D. Tex. June 16, 2015)

(distinguishing *Innova* and holding that, because the plaintiff "has alleged the specific plan terms

that it believes confer the benefits it seeks . . . the failure to distinguish between claims based on

ERISA plans and claims based on private plans does not require dismissal"); *Nat'l Renal All.,*

*LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 598 F. Supp. 2d 1344, 1362 (N.D. Ga. 2009)

(holding that plaintiff was not required to specify which patients were on ERISA or non-ERISA

plans and that *Twombly* does not require "a party plead policy number and other such details in

its complaint"). Furthermore, as Plaintiffs correctly note, Defendant has acknowledged it can

identify the plans by referring to the policy numbers contained in Appendix A.

Finally, the Amended Complaint alleges that Defendant has improperly withheld

information, such as Summary Plan documents, which has prevented Plaintiffs from being more

specific in their pleadings. (Dkt. No. 18, ¶¶ 95, 98, 149, 170 [Pls.' Am. Compl.].) This issue

was considered in *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 09-CV-

5619, 2010 WL 1979569, at *13 (N.D. Ill. May 17, 2010), where defendants argued that

plaintiffs' failure to identify specific ERISA plans warranted dismissal of the ERISA claims.

*Pennsylvania Chiropractic*, 2010 WL 1979569, at *13. The court noted that plaintiffs "allege in

both their complaint and their memorandum in response to defendants' motion that they are

unable to identify with greater specificity which plans and terms were violated because the

defendants purposefully withheld this information." *Id.* The court held that this was sufficient

to excuse their failure to be more particular in their pleadings regarding the individual plans. *Id.*

at *14.

Similarly, here, the Court finds that Plaintiffs have pled facts plausibly suggesting that any failure to identify the individual plans with greater specificity is due to Defendant having improperly withheld information.

For all of these reasons, Defendant's motion to dismiss Count One of the Amended Complaint is denied.

### 2.    Count Two

Defendant argues that Count Two fails to state a claim under ERISA §§ 502(a)(3) and 510 for the following two reasons.  First, Defendant argues that there is no controlling or proper authority for the position that a recoupment constitutes an "adverse benefit determination" under ERISA.  (Dkt. No. 23, Attach. 7, at 15 [Def.'s Mem. of Law].)

Second, Defendant argues that § 510 "only reaches conduct which fundamentally changes the employer-employee relationship so as to interfere with pension rights." (*Id.* [quoting *Swanson v. U.A. Local 13 Pension Plan*, 779 F. Supp. 690, 701-03 (W.D.N.Y. 1991)].) Defendant cites *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108 (2d Cir. 1988), where it was stated that § 510 "was designed primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Dister*, 859 F.2d at 1111.  Accordingly, Defendant argues that, because Plaintiffs do not allege any conduct by Defendant (a non-employer) that would fundamentally change the employer-employee relationship, or that it has the authority to discharge, fine, suspend, expel, or discipline Plaintiffs, Count Two should be dismissed.  (Dkt. No. 23, Attach. 7, at 15-16 [Def.'s Mem. of Law].)

In opposition, Plaintiffs make the following two arguments. First, Plaintiffs argue that, as alleged in their Amended Complaint, the court in *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 4 F. Supp. 3d 929 (N.D. Ill. 2013), expressly ruled that a demand for an overpayment refund or recoupment is an adverse benefits determination. (Dkt. No. 24, at 15 [Pls.' Opp'n Mem. of Law].) Plaintiffs argue that, while Defendant has utterly failed to provide any explanations for its recoupments, taking back money previously paid is nothing more than a reversal of the previous determination that the claims were payable, i.e., an adverse benefits determination. (*Id.*) Therefore, Plaintiffs argue that their claim under § 502(a)(3) should not be dismissed. (*Id.*)

Second, with regard to their claim under § 510, Plaintiffs argue that their allegations clearly state a plausible claim that Defendant retaliated against Plaintiffs through its recoupment efforts. (*Id.*) Specifically, Plaintiffs argue that the allegations make clear that the recoupment efforts began immediately after Plaintiffs complained to Defendant about improper payments. (*Id.*) According to Plaintiffs, this resulted in the issuance of a "Processing Error Letter," in which Defendant admitted that it had made an error in processing, and further stated that it had "implemented the measures necessary to ensure proper reimbursement of these claims in the future." (*Id.*) Thereafter, payments by Defendant immediately ceased. (*Id.*) Plaintiffs acknowledge that, while it may be "rare" that this claim is maintained against non-employers, the circumstances in the present matter are themselves rare and egregious. (*Id.* at 15-16.)

In reply, Defendant makes the following two arguments. First, Defendant argues that, *Pa. Chiropractic*, cited by Plaintiffs, should be disregarded because it is not proper or controlling authority. (Dkt. No. 30, at 7 [Def.'s Reply Mem. of Law].) Furthermore, Defendant argues this

-38-

decision treats a recoupment as an adverse benefit determination without relying on any case

authority, and without addressing whether a recoupment falls within the definition of an adverse

benefit determination. (*Id.*) Defendant argues that the alleged adjustment of payments because

of an error in overpaying Plaintiffs does not fall within the definition of an adverse benefit

determination under 29 C.F.R. § 2560.503-1. (*Id.*)

Second, Defendant argues that Plaintiffs have not provided any authority for their

argument that this matter presents rare circumstances. (*Id.*) In addition, Defendant reiterates its

argument that, as a non-employer, it has no authority to discipline Plaintiffs and thus cannot be

liable under § 510. (*Id.* at 7-8.)

After carefully considering the matter, the Court agrees with Plaintiffs that they have

stated a plausible claim under ERISA § 502(a)(3) for the reasons stated in their memorandum of

law. (Dkt. No. 24, at 15 [Pls.' Opp'n Mem. of Law].) With regard to Plaintiffs' claim under

ERISA § 510, the Court agrees with Defendant, and finds that Plaintiffs have failed to state a

claim upon which relief can be granted for the reasons stated in Defendant's memorandum of

law and reply memorandum of law. (Dkt. No. 23, Attach. 7, at 15-16 [Def.'s Mem. of Law];

Dkt. No. 30, at 7-8 [Def.'s Reply Mem. of Law].) To those reasons, the Court adds the

following analysis.

Under ERISA, an "'adverse benefit determination' means any of the following: a denial,

reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a

benefit . . . ." 29 C.F.R. § 2560.503-1(m)(4). If an insurer makes an adverse benefit

determination under an ERISA plan, a member or beneficiary of that plan is entitled to certain

rights under ERISA, including (1) sufficient notice of the adverse benefit determination, (2) the

right to appeal the adverse benefit determination, and (3) a full and fair review of the appeal. 29 C.F.R. § 2560.503-1(g)-(h).

It appears unsettled whether recoupment can be considered an adverse benefit determination under ERISA. This determination appears to depend on the circumstances in each case and how a recoupment is effected. *See*, *e.g.*, *Ct. Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP*, 14-CV-1859, 2015 WL 5122269, at *7 (D. Conn. Aug. 31, 2015) (noting that "some courts" have held withholding future payments in order to cover overpayments constitutes an adverse benefit determination. Conversely, other courts have held it does not constitute an adverse benefit determination where an insurer "seeks to recover directly the overpayments made to [a healthcare provider]"); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 09-CV-5619, 2012 WL 182213, at *6 (N.D. Ill. Jan. 23, 2012) (holding that, "[a]lthough a reasonable fact finder could find that Anthem Ohio's recoupment decision had some financial effect on Hopkins, the decision was not a 'denial, reduction, termination, or failure to provide a benefit' under the plain meaning of those terms"); *Cherene v. First Am. Fin. Corp. Long-Term Disability Plan*, 303 F. Supp. 2d 1030, 1036 n. 1 (N.D. Cal. 2004) (holding that a "withholding of a benefit–even if done to compensate for a claimed reimbursement–is either a 'reduction' or 'failure to provide or make payment (in whole or in part) for, a benefit'").[9]

Here, the Amended Complaint alleges that Defendant "recouped funds from Plaintiffs through adjustments and withholdings on otherwise covered claims in an amount at least equal to $310,807.38[.]" (Dkt. No. 18, ¶ 72 [Pls.' Am. Compl.].) In addition, "during the period from

---

[9]    Significantly, *Pa. Chiropractic Ass'n*, which is cited by Plaintiffs in support of their argument that a recoupment constitutes an adverse benefit determination, was recently reversed by the Seventh Circuit. *Pa. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802 F.3d 926 (7th Cir. 2015). However, the court did not specifically address that argument in its decision.

September 23, 2013 through January 30, 2013, Plaintiffs submitted claims with total charges in

the amount of $1,289,106.96 that were reimbursed by Defendant at extremely low rates, or

denied outright, without any notice of explanation of any purported reasons for the drastic

reduction in payments." (*Id.*, ¶ 62.)  The Amended Complaint contains additional allegations of

similar conduct.  (*Id.*, ¶¶ 54-76.)  Taking these allegations as true, the Court finds that the

Amended Complaint alleges facts plausibly suggesting that Defendant's withholding and/or

reduction of benefits constitutes a "denial," "reduction," or "failure to provide or make payment"

under 29 C.F.R. § 2560.503-1(m)(4) and, therefore, constitutes an adverse benefit determination.

However, the Court finds that Count Two fails to state a claim upon which relief can be

granted under ERISA § 510.  This Court stated in *Bamforth v. Frontier Commc'ns Corp.*, 11-

CV-0725, 2012 WL 6202280 (N.D.N.Y. Dec. 12, 2012) (Suddaby, J.), that, "[a]lthough it is

possible that non-employers such as plan administrators may violate ERISA § 510, that

occurrence is rare, because most non-employers do not have authority to fundamentally change

the employer-employee relationship." *Bamforth*, 2012 WL 6202280, at *7 (citing *Adams v.

Koppers Co., Inc.*, 684 F. Supp. 399, 402 [W.D.Pa. 1988]).  Here, as in *Bamforth*, the Amended

Complaint does not allege facts plausibly suggesting that Defendant had the power to discharge,

fine, suspend, expel or discipline Plaintiffs, or otherwise interfered with their employment

relationships.  *See Roe v. Empire Blue Cross Blue Shield*, 12-CV-4788, 2014 WL 1760343, at *4

(S.D.N.Y. May 1, 2014) (noting that courts in this Circuit have held that § 510 proscribes only

interference with the employment relationship) (collecting cases).  The Court is unpersuaded by

Plaintiffs' arguments that this case presents rare and egregious circumstances that warrants a

different conclusion.

E.     **Whether Plaintiffs' State Law Claims Fail to State a Claim Upon Which Relief Can Be Granted**

1.     **Whether Plaintiffs' State Law Claims (Counts Six Through Eleven) Relating to the Federal Health Benefit Program Are Preempted by Federal Statute and Barred as a Matter of Law**

Defendant argues that Plaintiffs' state law claims that relate to payment on behalf of enrollees in the Federal Health Benefit Program ("FEHB") should be dismissed for the following three reasons. First, Defendant argues that these claims are preempted by FEHB. (Dkt. No. 23, Attach. 7, at 18 [Def.'s Mem. of Law].) In support, Defendant cites 5 U.S.C. § 8902(m)(1), which states that "[t]he terms of any [FEHB] contract . . . which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." (*Id.*)

Second, Defendant argues that these claims were not brought against the proper defendant because the Office of Personnel Management ("OPM") regulation, 5 C.F.R. § 890.107(c), "instructs enrollees who seek to challenge benefit denials to proceed in court against OPM 'and not against the carrier or carrier's subcontractors.'" (*Id.* [quoting *Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 680 (2006)].) Accordingly, Defendant argues that these claims should be dismissed because Plaintiffs improperly sued Defendant instead of OPM. (*Id.*)

Third, and finally, Defendant argues that these claims should be dismissed because Plaintiffs did not exhaust their administrative remedies with regard to these claims as provided in 5 C.F.R. § 890.105, which include appealing the non-payments to the health plan and to OPM. (*Id.*)

In opposition, Plaintiffs cite the underlying Second Circuit decision in *McVeigh* (which was subsequently affirmed by the Supreme Court), and argue that the Second Circuit expressly rejected Defendant's interpretation of the preemptive effects of the Federal Employees Health Benefits Act ("FEHBA").  (Dkt. No. 24, at 16-17 [Pls.' Opp'n Mem. of Law] [citing *Empire HealthChoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 146 (2d Cir. 2005)].)  Specifically, Plaintiffs argue that their state law claims are not preempted because the Second Circuit explained that the "[FEHBA] may only preempt state or local laws if those laws 'relate[] to health insurance or plans' . . . . Without any showing that the dispute implicates a specific state law or state common-law principle 'relating to health insurance,' [FEHBA] does not authorize federal preemption of state law . . . ." (*Id.* [citing *McVeigh*, 396 F.3d at 145].)

In reply, Defendant makes the following two arguments.  First, Defendant argues that, unlike the plaintiffs in *McVeigh*, Plaintiffs in this case are seeking reimbursement for health services or health plans and therefore their claims clearly fall within the scope of preempted claims.  (Dkt. No. 30, at 8 n. 10 [Def.'s Reply Mem. of Law].)

Second, Defendant reiterates its argument that Plaintiffs' state law claims should be dismissed because they failed to bring them against the proper defendant and did not exhaust their administrative remedies.  (*Id.* at 8.)  Furthermore, Defendant argues that Plaintiffs did not respond to these arguments and, because they have not been opposed, the motion should be granted.  (*Id.*)

After carefully considering the matter, the Court agrees with Defendant for the reasons stated in its memorandum of law and reply memorandum of law.  (Dkt. No. 23, Attach. 7, at 18 [Def.'s Mem. of Law]; Dkt. No. 30, at 8 [Def.'s Reply Mem. of Law].)  Most notably, Plaintiffs

have failed to bring their claims against OPM, which, as Defendant correctly notes, is the proper

defendant in actions seeking to challenge denial of benefits under FEHB plans.  *See Mbody*,

2014 WL 4058321, at *5-6 (dismissing state law claims governed by FEHB for failing to

proceed against OPM); *McVeigh*, 547 U.S. at 680; 5 C.F.R. § 890.107(c).  Therefore, Plaintiffs'

state law claims under plans governed by FEHB are dismissed.

> **2.** **Whether Plaintiffs' State Law Claims (Counts Six Through Eleven) Arising Under Medicare Plans Must Be Dismissed for Failure to Exhaust Administrative Remedies**

Defendant argues that Medicare plans are governed by the Social Security Act, 42 U.S.C.

§ 405, and that, pursuant to this section, Plaintiffs cannot bring a claim in federal court unless

they have exhausted the Medicare appeals process.  (Dkt. No. 23, Attach. 7, at 19 [Def.'s Mem.

of Law].)  Defendant argues that Plaintiffs have failed to allege that they have exhausted any of

the required administrative remedies, such as an appeal to an administrative law judge.  (*Id.*)

Therefore, Defendant argues that Plaintiffs' state law claims arising under Medicare plans should

be dismissed.

In opposition, Plaintiffs appear to argue that their state law claims do not "arise under"

the Medicare Act because their claims are payment disputes that do not involve Medicare or the

Medicare administrative process.  (Dkt. No. 24, at 17 [Pls.' Opp'n Mem. of Law].)  In support of

this argument, Plaintiffs cite *Canandaigua Emergency Squad, Inc. v. Rochester Area Health*

*Maint. Org., Inc.*, 780 F. Supp. 2d 313 (W.D.N.Y. 2011), in which the parties disputed a health

maintenance organization's decision to begin withholding payments to plaintiffs to offset

overpaid claims made in the past.  (*Id.*)  According to Plaintiffs, the defendant in *Canandaigua*

removed the case to federal court based, in part, on its argument that the claims arose under the

Medicare Act.  (*Id.* [citing *Canandaigua*, 780 F. Supp. 2d at 320].)  The Western District held

that the claims did not arise under the Medicare Act because "[n]either the government nor any

Medicare enrollees are parties to this action, nor do they have any particular interest in the

outcome of this case.  No enrollees have been denied benefits, or are in danger of being denied

benefits, and no government funds are at risk." (*Id.*)  Plaintiffs argue that the same conditions

exist in the present case.  (*Id.*)

       In reply, Defendant argues that Plaintiffs' reliance on *Canandaigua Emergency Squad* in

support of their argument that claims arising under Medicare are not preempted by the Medicare

Act is misplaced.  (Dkt. No. 30, at 9 [Def.'s Reply Mem. of Law].)  More specifically, Defendant

argues that it has not asserted that these claims are preempted.  (*Id.*)  Rather, Defendant argues

that Plaintiffs are required to exhaust the Medicare appeal process and have not done so.  (*Id.*)

       After carefully considering the matter, the Court agrees with Plaintiffs, in part, for the

reasons stated in their opposition memorandum of law.  (Dkt. No. 24, at 17 [Pls.' Opp'n Mem. of

Law].)  To those reasons, the Court adds the following analysis.

       "As the Supreme Court has explained, 'the sole avenue for judicial review of all claims

arising under the Medicare Act' is through the exhaustion of administrative remedies before the

Secretary." *Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185, 191 (S.D.N.Y. 2012) (quoting

*Heckler v. Ringer*, 466 U.S. 602, 614-15 [1984]).  "A claim 'arises under' the Medicare Act (1)

if 'both the standing and substantive basis' for the claim is the Medicare Act, or (2) if the claim

is 'inextricably intertwined' with a claim for benefits under the Medicare Act." *Potts*, F. Supp.

2d at 192 (S.D.N.Y. 2012) (quoting *Heckler*, 466 U.S. at 615).  Courts have found that, where a

claim is "wholly collateral" to a claim for benefits, it does not arise under the Medicare Act.  *See*

*Heckler*, 466 U.S. at 618 (noting that a claim that is wholly collateral to a claim for benefits under the Medicare Act is an exception to the exhaustion requirement); *Ardary v. Aetna Health Plans of Ca., Inc.*, 98 F.3d 496, 499 (9th Cir. 1996) (finding that a wrongful death claim for compensatory and punitive damages based on provider's failure to transfer or airlift decedent to intensive cardiac care facility was not subject to Medicare administrative review process); *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1145 (9th Cir. 2010) (in establishing a wholly collateral claim, a plaintiff "may be able to prove elements of [his tort] causes of action without regard to any of the provisions of the [Medicare] Act relating to the provision of benefits").

The claims at issue in *Canandaigua*, have been characterized by other courts as "payment claims." *United Behavioral Health v. Maricopa Integrated Health Sys.*, 237 Ariz. 559, 1125 (Ariz. Ct. App. 2015).  "In a payment claim, there is no dispute that the benefits are covered by Medicare; the issue is the amount the [Medicare Advantage Organization or "MAO"] should pay the provider for the covered benefit." *Maricopa*, 237 Ariz. at 1125.  The Second Circuit has recognized this distinction as well.  In *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321 (2d Cir. 2011), an ERISA case, the Second Circuit noted that there is

> a common distinction in the case law between claims involving the "right to payment" and claims involving the "amount of payment"–that is, on the one hand, claims that implicate coverage and benefits established by the terms of the ERISA benefit plan, and, on the other hand, claims regarding the computation of contract payments or the correct execution of such payments.  The former are said to constitute claims for benefits that can be brought pursuant to § 502(a)(1)(B), while the latter are typically construed as independent contractual obligations between the provider and PPO or benefit plan.

*Montefiore*, 642 F.3d at 331.  A payment claim is typically considered to be wholly collateral to a coverage claim.  *See, e.g, RenCare, Ltd. v. Humana Health Plan of Tx., Inc.*, 395 F.3d 555, 558

-46-

(5th Cir. 2004) (holding that services for which payment was sought by provider had been approved by the MAO and, therefore, the dispute was a payment dispute, not a coverage dispute subject to Medicare appeals process); *Maricopa*, 237 Ariz. at 1125 (citing cases).

In the present case, Plaintiffs appear to argue that, because their claims are payment claims related to the amount of money they are allegedly owed, those claims do not arise under the Medicare Act.  Accordingly, "the Court must decide whether the claims at issue here are 'right to payment' claims or 'amount of payment' claims." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 12-CV-1633, 2012 WL 9391428, at *9 (E.D.N.Y. Nov. 8, 2012).  A review of the Amended Complaint reveals that the majority of Plaintiffs' claims arise from Defendant's alleged underpayment of submitted claims in an effort to offset or recoup previously overpaid claims.  (Dkt. No. 18, ¶¶ 54-76 [Pls.' Am. Compl.].)  However, the Amended Complaint also alleges, in passing, that some claims have been improperly denied.  For example, the Amended Complaint alleges that "Defendant's conduct persists to this date, resulting in more than $2,056,417.43 in *denied*, delayed and under-reimbursed claims for medically necessary, covered out-of-network emergency surgical services that Plaintiffs have provided to Defendant's enrollees, plus an additional $310,807.38 in recouped funds." (*Id.*, ¶ 75) (emphasis added).[10] Where the Amended Complaint alleges that some claims have been denied, it does not state the alleged reasons for such denials or whether the denied claims were under non-ERISA plans, such as Medicare.

---

[10] In addition, the Amended Complaint alleges that the "claims that Plaintiffs contend were improperly denied, recouped, or reimbursed at improperly low rates are listed, by line of business, on the Appendices A and B annexed hereto." (Dkt. No. 18, ¶ 83 [Pls.' Am. Compl.].)  However, the Appendices do not make clear what claims, if any, were denied due to a lack of insurance coverage.

The Court is mindful that a party cannot evade the Medicare administrative process by creatively and "cleverly conceal[ing]" a coverage claim as arising under some source other than Medicare. *See Potts*, 897 F. Supp. 2d at 192 (noting that "[t]he Courts of Appeals advise that courts be wary of claims that are 'cleverly concealed claims for benefits'"). However, the Court is unable to determine, at this time, what claims, if any, were improperly denied due to coverage and whether any such claims were under the Medicare plans. Because "a coverage claim necessarily involves reference to an interpretation of a Medicare benefit plan, as well as Medicare coverage standards[,]" any such claims would likely be found to arise under the Medicare Act and would require exhaustion of Medicare's administrative process. *Maricopa*, 237 Ariz. at 1124; *see also Josephson v. United Healthcare Corp.*, 11-CV-3665, 2012 WL 4511365, at *1-3 (E.D.N.Y. Sept. 28, 2012) (holding that claims based on denial of coverage implicated terms of ERISA benefit plan and therefore were preempted).

At this time, the Court finds that the allegations in the Amended Complaint plausibly suggest–albeit barely–that Plaintiffs' claims dispute the amounts of payments they have received and do not arise under the Medicare Act. The Court will revisit this issue should it be raised on a future motion.

### 3.    Whether Plaintiffs Lack Standing to Bring Their Contract-Related State Law Claims (Counts Six and Seven)

Defendant argues that Plaintiffs' breach of contract claim and claim for breach of the covenant of good faith and fair dealing should be dismissed due to Plaintiffs' lack of standing. (Dkt. No. 23, Attach. 7, at 19 [Def.'s Mem. of Law].) In support of this argument, Defendant re-asserts the same arguments already raised and discussed in Point III.A. of this Decision Order. (*Id.*) Once again, these include arguments that (1) Plaintiffs' assignments are barred by the anti-

assignment provisions, (2) Plaintiffs' assignments for 199 of the claims do not confer the right to file suit, and (3) Plaintiffs have not received an assignment for 176 of their claims. (*Id.*)

The Court has already determined that these arguments lack merit. Accordingly, Defendant's motion to dismiss Counts Six and Seven of the Amended Complaint on the basis of standing is denied.

### 4.    Whether Plaintiffs Have Failed to State a Claim for Breach of Contract

Defendant argues that Plaintiffs' breach of contract claim must be dismissed because Plaintiffs have failed to identify specific contracts or contractual provisions that were breached. (Dkt. No. 23, Attach. 7, at 20 [Def.'s Mem. of Law].)

In opposition, Plaintiffs rely on their arguments that were previously discussed in Point III.D.1. of this Decision and Order. (Dkt. No. 24, at 18 [Pls.' Opp'n Mem. of Law].)

After carefully considering the matter, the Court agrees with Plaintiffs for the reasons stated in their opposition memorandum of law. (Dkt. No. 24, at 11-14, 18 [Pls.' Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

Under New York law, a plaintiff alleging a breach of contract claim must allege facts plausibly suggesting the following elements: (1) the existence of a contract; (2) adequate performance of the contract by the plaintiff; (3) breach by the other party; and (4) damages suffered as a result of the breach. *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Wolff v. Rare Medium, Inc.*, 17 F. Supp. 2d 354, 358 (S.D.N.Y. 2001). "A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim." *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d

274, 296 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Howell v. Am. Airlines, Inc.*, 05-CV-3628,

2006 WL 3681144, at *3 [E.D.N.Y. Dec. 11, 2006]).  "However, the complaint must at least 'set

forth the terms of the agreement upon which liability is predicated . . . by express reference.'"

*Loomis Armored US, LLC*, 900 F. Supp. 2d at 296 (quoting *Howell*, 2006 WL 3681144, at *3).

        As discussed above in Point III.D.1. of this Decision and Order, the Court agrees with

Plaintiffs that the allegations contained in the Amended Complaint (as summarized in Plaintiffs'

opposition memorandum of law [Dkt. No. 24, at 12-14]), coupled with the claims schedule in

Appendix A to the Amended Complaint, provide fair notice of Plaintiffs' claims and the grounds

upon which they rest.  Moreover, Defendant has acknowledged it can identify the plans by

referring to the policy numbers contained in Appendix A.  (Dkt. No. 23, Attach. 7, at 4 [Def.'s

Mem. of Law]); *see also Carlson v. Nielsen*, 13-CV-5207, 2014 WL 4771669, at *4 (N.D. Ill.

Sept. 23, 2014) (noting that "the Corporate Defendants do not . . . contend that they do not

possess copies of the additional agreements, and thus their claim that they lack adequate notice

of the terms of the agreements rings hollow").  Finally, the Court finds that the detailed

allegations in Plaintiffs' Amended Complaint plausibly suggest a breach of contract claim under

the elements discussed above.

>        **5.        Whether Plaintiffs Have Failed to State a Claim for Breach of the
>                    Covenant of Good Faith and Fair Dealing (Count Seven)**

        Defendant argues that Plaintiffs' claim for breach of the implied covenant of good faith

and fair dealing should be dismissed because it is redundant of their breach of contract claim.

(Dkt. No. 23, Attach. 7, at 20-21 [Def.'s Mem. of Law].)

        In opposition, Plaintiffs cite *Konecranes, Inc. v. Cranetech, Inc.*, 03-CV-6082, 2005 WL

246916, at *3 (W.D.N.Y. Feb. 2, 2005), and argue that it can maintain both claims because, even

if Plaintiffs are unable to prove that Defendant breached the strict terms of the contract, Plaintiffs may be able to prove that Defendant's conduct was not in compliance with the implied covenants of good faith and fair dealing.  (Dkt. No. 24, at 18-19 [Pls.' Opp'n Mem. of Law].)  More specifically, Plaintiffs argue that the Amended Complaint alleges that "Defendant has acted in bad faith by inconsistently and arbitrarily processing Plaintiffs' claims" and "Defendant has intentionally acted to undermine Plaintiffs' ability to collect payments they are entitled to."  (*Id.* at 19.)  Therefore, according to Plaintiffs, even if Defendant is correct that its conduct did not violate the terms of the contract, its conduct still violated the implied covenant.  (*Id.*)

In reply, Defendant argues that *Konecranes* is distinguishable because, in that case, the breach of covenant claim alleged that the defendant misappropriated material, whereas the contract claim alleged that the defendant disclosed material.  (Dkt. No. 30, at 9 [Def.'s Reply Mem. of Law].)  Conversely, in the present case, Defendant argues that, because the acts alleged for both claims are the same, Plaintiffs' breach of implied covenant claim should be dismissed. (*Id.*)

After carefully considering the matter, the Court agrees with Defendant for the reasons stated in its memorandum of law and reply memorandum of law.  (Dkt. No. 23, Attach. 7, at 20-21 [Def.'s Mem. of Law]; Dkt. No. 30, at 9 [Def.'s Reply Mem. of Law].)  *See Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) (noting that "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled").  Accordingly, Plaintiffs' claim for breach of good faith and fair dealing is dismissed.

6.    **Whether Plaintiffs Have Failed to State a Claim for Quasi-Contract/Unjust Enrichment (Count Eight)**

Defendant argues that Plaintiffs' unjust enrichment claim should be dismissed for the following three reasons.  First, Defendant argues that the alleged medical services were provided at the behest of patients, not at the behest of Defendant.  (Dkt. No. 23, Attach. 7, at 21 [Def.'s Mem. of Law].)

Second, Defendant argues that an unjust enrichment claim cannot be brought when the matter is controlled by contract.  (*Id.*)

Third, Defendant argues that the Amended Complaint fails to allege facts plausibly suggesting that patients were charged higher premiums based on their access to out-of-network providers.  (*Id.* at 22.)  Furthermore, Defendant argues that Plaintiffs' conclusory allegation that, "Defendant received windfalls in the form of increased insurance premiums" without any facts showing that Defendant received such premiums, does not meet the pleading standard under *Twombly* and *Iqbal*.  (*Id.*)

In opposition, Plaintiffs make the following three arguments.  With regard to Defendant's first basis for dismissal, Plaintiffs argue that services being provided to enrollees "at the behest" of the insurer, rather than at the behest of the patient, is not an element of an unjust enrichment claim.  (Dkt. No. 24, at 20 [Pls.' Opp'n Mem. of Law].)  In support, Plaintiffs cite *N.Y.C. Health & Hosps. Corp. v. WellCare of N.Y., Inc.*, 35 Misc. 3d 250, 258 (N.Y. Sup. Ct. N.Y. Cnty. Dec. 15, 2011), for the proposition that "[a] claim for unjust enrichment does not require that the party enriched take an active role in obtaining the benefit." (*Id.*)  Finally, Plaintiffs argue that it would be "against equity and good conscience" to permit Defendant to retain the benefit it has enjoyed at Plaintiffs' expense.  (*Id.*)

With regard to Defendant's second basis of dismissal, Plaintiffs argue that New York law permits the alternative pleading of breach of contract and unjust enrichment claims.  (*Id.* at 21.) Plaintiffs cite *Sergeants Benevolent Ass'n Annuity Fund v. Renck*, 19 A.D.3d 107, 112 (N.Y. App. Div. 1st Dept. 2005), where the court sustained a claim for unjust enrichment, despite the existence of a valid and enforceable contract, because the claim was predicated on conduct not covered by the contract.  (*Id.*)  In the present case, Plaintiffs argue that their unjust enrichment claim is based on conduct outside of the contract, including Defendant's failure to pay Plaintiffs more than in-network providers, despite charging enrollees more for out-of-network benefits. (*Id.*)

Finally, with regard to Defendant's third basis for dismissal, Plaintiffs cite ¶ 104 of the Amended Complaint and argue that they have alleged facts plausibly suggesting that patients were charged higher premiums based on their access to out-of-network providers.  (*Id.*) Plaintiffs argue that proof of these allegations will be established later but that their allegations satisfy the liberal pleading standards of *Twombly* and *Iqbal*.  (*Id.*)

In reply, Defendant argues that Plaintiffs' theory of unjust enrichment was rejected in *Mbody*, 2014 WL 4058321, at *7.  (Dkt. No. 30, at 9-10 [Def.'s Reply Mem. of Law].) Defendant further argues that, because Plaintiffs have not set forth any reason for this Court to stray from the decision in *Mbody*, the Court should dismiss Plaintiffs' claim.

After carefully considering the matter, the Court agrees with Defendant for the reasons stated with regard to its third basis for dismissal.[11] (Dkt. No. 23, Attach. 7, at 22 [Def.'s Mem. of

---

[11]     Specifically, with respect to Defendant's first argument, the Appellate Division, First Department, recently clarified that, in addition to pleading the elements of an unjust enrichment claim, "the pleadings must assert a connection between the parties that [is] not too attenuated." *Philips Int'l Inv., LLC v. Pektor*, 117 A.D.3d 1, 102 (N.Y. App. Div. 1st Dept. 2014) (internal quotations omitted).

Law]; Dkt. No. 30, at 9-10 [Def.'s Reply Mem. of Law].)   As in *Mbody*, Plaintiffs have failed to allege facts plausibly suggesting that Defendant charged patients higher premiums because of the out-of-network coverage.  *Mbody*, 2014 WL 4058321, at *7.  With respect to Plaintiffs' remaining allegations regarding this claim, they are governed by the plan documents and/or contracts.  *See Vitale v. Steinberg*, 307 A.D.2d 107, 111 (N.Y. App. Div. 1st Dept. 2003) (holding that "the existence of the plan agreement, an express contract governing the subject matter of plaintiff's claims, also bars the unjust enrichment cause of action").  Accordingly, Plaintiffs' unjust enrichment claim is dismissed.

### 7.    Whether Plaintiffs Have failed to state a claim under N.Y. General Business Law § 349 (Count Nine)

Defendant argues that Plaintiffs' claim under N.Y. Gen. Bus. Law § 349 should be dismissed for the following two reasons.  First, Defendant argues that, because physicians claiming payment from insurers are not "consumers" under GBL § 349, Plaintiffs are not protected under the statute.  (Dkt. No. 23, Attach. 7, at 22 [Def.'s Mem. of Law].)

Second, Defendant argues that Plaintiffs have failed to allege facts plausibly suggesting that it charged premiums based on out-of-network coverage.  (*Id.*)  Rather, according to

---

Significantly, the court noted that, "although a plaintiff could satisfy this requirement by alleging that the benefit was conferred at the behest of the defendant, *the Court of Appeals has never required such a relationship*.  Rather, the pleadings merely have to 'indicate a relationship between the parties that could have caused a reliance or inducement.'" *Philips Int'l Inv., LLC*, 117 A.D.3d at 102-03 (quoting *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 517 [N.Y. 2012]) (emphasis added).  Therefore, whether medical services were provided at the behest of Plaintiffs' patients does not appear dispositive.

With respect to Defendant's second argument, an unjust enrichment claim can, under certain circumstances, survive a motion to dismiss even when a valid and enforceable contract exists.  *See Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 376 (E.D.N.Y. 2012) (denying defendants' motion to dismiss because plaintiff's "unjust enrichment claims are predicated on conduct not covered by the contract" and noting that, "the rule defendants would have me adopt—that an unjust enrichment claim is never cognizable where a valid contract exists between the parties—is too broadly stated").

Defendant, Plaintiffs have made only conclusory allegations regarding these higher premiums without referencing a particular plan or alleging facts that support this claim. (*Id.* at 22-23.)

In opposition, Plaintiffs concede that, while they may not be consumers for purposes of GBL § 349, Defendant's "deceptive conduct is, at least to some extent, directed at non-business consumers." (Dkt. No. 24, at 21-22 [Pls.' Opp'n Mem. of Law] [quoting *Eaves v. Design Fin. Inc.*, 785 F. Supp. 2d 229, 266 (S.D.N.Y. 2011)].) In this regard, Plaintiffs argue that Defendant's alleged conduct in charging higher premiums based on out-of-network coverage is deceptive, directed at consumers, and causes harm, including increasing the cost of medical services and threatening the availability of medical services in Plaintiffs' geographical area. (*Id.* at 22.) Furthermore, Plaintiffs argue that, while the injury to them is direct, it results, in part, from Defendant's deception of its consumer enrollees. (*Id.*) Therefore, Plaintiffs argue that, just as a corporation may redress a competitor's deceptive consumer practices under GBL § 349, Plaintiffs should be able to redress Defendant's deceptive consumer practices under the statute. (*Id.*)

In reply, Defendant reiterates its argument that physicians are not consumers under the statute and therefore are not protected. (Dkt. No. 30, at 10 [Def.'s Reply Mem. of Law].)

After carefully considering the matter, the Court agrees with Defendant for the reasons stated in its memorandum of law. (Dkt. No. 23, Attach. 7, at 22 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

"To state a prima face case under § 349, Plaintiff must show: 'first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.'" *Vitolo v. Mentor H/S,*

*Inc.*, 426 F. Supp. 2d 28, 33 (E.D.N.Y. 2006) (quoting *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 [N.Y. 2000]).  "With regard to the first factor, 'the gravamen of the complaint must be consumer injury or harm to the public interest.'" *Vitolo*, 426 F. Supp. 2d at 33-34 (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 [2d Cir. 1995]).  Courts have held that "physicians requesting payment from insurers are not 'consumers' under [GBL § 349]." *Mbody*, 2014 WL 4058321, at *7; *accord*, *Med. Soc'y of State of N.Y. v. Oxford Health Plans, Inc.*, 15 A.D.3d 206, 207 (N.Y. App. Div. 1st Dept. 2005); *Vitolo*, 426 F. Supp. 2d at 34. However, "'[t]he critical question . . . is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor.'"  *Vitolo*, 426 F. Supp. 2d at 33-34 (quoting *Securitron Magnalock Corp.*, 65 F.3d at 264).

Here, as in *Vitolo*, the Amended Complaint focuses almost entirely on the losses suffered by Plaintiff, Dr. Talarico, and his business, rather than on the losses to consumers or Plaintiffs' patients.  In addition, as discussed in the preceding section, Plaintiffs have failed to allege facts plausibly suggesting that Defendant charged higher premiums based on out-of-network coverage.  Accordingly, "[w]here the gravamen of the complaint is harm to a business as opposed to the public at large, the business does not have cognizable cause of action under § 349." *Gucci Am., Inc. v. Duty Free, Ltd.*, 277 F. Supp. 2d 269, 274 (S.D.N.Y. 2003).

**8.    Whether Plaintiffs Have Failed to State a Claim Under N.Y. Insurance Law § 3224-a (Count Ten)**

Defendant argues that N.Y. Ins. Law § 3224-a requires certain health plans to respond to claims submitted by providers within 45 days (so long as the claims were timely submitted) and to pay or deny claims within 45 days after an appeal.  (Dkt. No. 23, Attach. 7, at 23 [Def.'s Mem. of Law].)  Defendant further argues that Plaintiffs have failed to allege in their Amended

Complaint the date that each claim was submitted, or that 45 days had elapsed since the dates that they were submitted. (*Id.*) Accordingly, Defendant argues that Plaintiffs' claim should be dismissed.

In opposition, Plaintiffs argue the Amended Complaint alleges that Plaintiffs are still waiting for proper payment for every claim in this action and that, "[f]or all the improper under-reimbursements related to enrollees in Defendant's Plans, more than forty-five days have elapsed." (Dkt. No. 24, 22-23 [Pls.' Opp'n Mem. of Law].) Furthermore, Plaintiffs argue that Appendix A to the Amended Complaint sets forth the dates of service and the dates of first and second-level appeals. (*Id.*)

Finally, Plaintiffs argue the Amended Complaint alleges that "[a]s a routine practice, Plaintiffs appeal underpaid or denied claims within one (1) month of receiving notification of an insurer's adjudication of their claims, including Defendant's" and that "Plaintiffs follow the same appeals process on every underpaid or unpaid claim as a matter of course." (*Id.*)

In reply, Defendant argues that merely alleging that "[f]or all the improper under-reimbursements related to enrollees in Defendant's Plans, more than forty-five days have elapsed" is insufficient in pleading the requirements of § 3224-a. (Dkt. No. 30, at 10 [Def.'s Reply Mem. of Law].) In addition, Defendant argues that the table in Appendix A indicates that many of Plaintiffs' claims were not appealed on a first or second level. (*Id.*)

Construing the Amended Complaint in the light most favorable to Plaintiffs, the Court finds that Plaintiffs' allegations plausibly suggest that their claims were timely submitted and Defendant failed to properly respond within 45 days of those claims that were appealed (as represented in Appendix A). Accordingly, Defendant's motion to dismiss the claims brought pursuant to § 3224-a is denied.

      **9.**      **Whether Plaintiffs Have Failed to State a Claim for Tortious Interference with Prospective Economic Advantage (Count Eleven)**

Defendant argues that Plaintiffs' tortious interference claim must be dismissed for the following two reasons.  First, Defendant argues that Plaintiffs have failed to identify patients and/or business they lost as a result of Defendant's actions.  (Dkt. No. 23, Attach. 7, at 23-24 [Def.'s Mem. of Law].)  Moreover, Defendant argues that any claim that Plaintiffs' patients will refuse their medical services the next time they are in an emergency and require medical care is pure speculation.  (*Id.* at 24.)

Second, Defendant argues that Plaintiffs have failed to identify patients and/or business they lost as a result of hospitals (with which Plaintiffs are associated) referring fewer patients to them due to Defendant's alleged actions.  (*Id.*)

In opposition, Plaintiffs make the following three arguments.  First, Plaintiffs argue that they have alleged that Defendant has interfered with their business relationships by representing, to both their patients and the hospitals with which they are associated, that Plaintiffs had been paid for their medical services when Defendant had actually recouped such payments.  (Dkt. No. 24, at 23 [Pls.' Opp'n Mem. of Law].)  According to Plaintiffs, this plausibly suggests that their efforts to recover payment for their services was improper and/or fraudulent.  (*Id.*)  In some instances, Plaintiffs argue that Defendant expressly stated to patients that Plaintiffs' balance-billing efforts were fraudulent.  (*Id.*)

Second, Plaintiffs argue that they have alleged harm to these relationships by alleging that Defendant's actions have impeded Plaintiffs' ability to recover moneys owed for services they rendered to certain patients and made it less likely that such patients will seek medical services from Plaintiffs in the future.  (*Id.* at 24.)  In addition, Plaintiffs argue that, as a result of

Defendant's false statements to Plaintiffs' patients, the Amended Complaint alleges "numerous such patients have complained to the administrators of the hospitals with which Plaintiffs are associated. As a direct result, those hospitals have drastically curtailed their referrals to Plaintiffs." (*Id.*)

Third, Plaintiffs argue that, at the pleading stage, they are not required to name specific patients, citing *Franzon v. Massena Mem. Hosp.*, 977 F. Supp. 160, 166 (N.D.N.Y. 1997) (McAvoy, C.J.). (*Id.* at 24-25.)

In reply, Defendant reiterates its argument that Plaintiffs have not identified a specific relationship with their patients that was discontinued, or specific business from potential patients they lost, as a result of Defendant's alleged actions. (Dkt. No. 30, at 10 [Def.'s Mem. of Law].) According to Defendant, this is a fatal defect to Plaintiffs' claim. (*Id.*)

After carefully considering the matter, the Court agrees with Plaintiffs for the reasons stated in their opposition memorandum of law. (Dkt. No. 24, at 23-25 [Pls.' Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

To prevail on a claim for tortious interference with prospective economic advantage, "a plaintiff in New York must prove that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair or improper means; and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v Noonan*, 350 F.3d 6, 17 (2d Cir. 2003) (citing *Goldhirsh Grp., Inc. v. Alpert*, 107 F.3d 105, 108-09 [2d Cir. 1997]).

Having carefully reviewed the allegations in the Amended Complaint, the Court finds that Plaintiffs have alleged facts plausibly suggesting a claim for tortious interference. (Dkt. No.

-59-

18, ¶¶ 227-34 [Pls.' Am. Compl.].)  The Court is aware of case precedent that purportedly requires a plaintiff to specifically identify the relationships allegedly damaged by a defendant's tortious conduct.  *See, e.g.*, *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 369 (S.D.N.Y. 2012) (collecting cases).  However, it is well established that both *Twombly* and *Iqbal* do not require heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face.  *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010) (rejecting defendant's contention "that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible").

Accordingly, the Court finds that Plaintiffs' allegations, as discussed above, plausibly suggest that their business relationships were damaged by Defendant's alleged actions.  These specific relationships, including the identity of patients and the hospitals Plaintiffs were associated with, should be identifiable during discovery.

### F.    Defendant's Motion for a More Definite Statement

Defendant argues that Plaintiffs should be required to make a more definite statement because the Amended Complaint fails to distinguish between patients who are participants in an ERISA plan and those who are not.  (Dkt. No. 23, Attach. 7, at 24 [Def.'s Mem. of Law] [citing *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, 11-CV-0806, 2013 WL 5519320 [(E.D. La. Sept. 30, 2013)]].)  In addition, Defendant argues that Plaintiffs should be required to identify the specific plan terms that were allegedly breached and the manner in which they were breached.  (Dkt. No. 23, Attach. 7, at 24-25 [Def.'s Mem. of Law].)

Plaintiffs argue that, to the extent the Court is inclined to dismiss any of its claims, it should instead order Plaintiffs to file and serve a more definite statement. (Dkt. No. 24, at 25 [Pls.' Opp'n Mem. of Law].)

"A motion pursuant to Rule 12(e) should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 68 (S.D.N.Y. 1999) (internal quotation omitted). The rule is designed "to strike at unintelligibility rather than want of detail and . . . allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement." *Vapac Music Publ'g, Inc. v. Tuff 'N' Rumble Mgmt.*, 99-CV-10656, 2000 WL 1006257, at *6 (S.D.N.Y. July 19, 2000); *see also Pell v. Pall Corp.*, 07-CV-0092, 2007 WL 2445217, at *2 (E.D.N.Y. Aug. 20, 2007) (noting that "Rule 12(e) motions are generally disfavored. The 'preferred course' is to encourage the use of discovery procedures to make clear the factual basis for the parties' claims.").

For the reasons discussed in Points III.D.1. and III.E.4. of this Decision and Order, the Court finds that Plaintiffs' claims are not so ambiguous and excessively vague as to render them unintelligible. The Court believes that discovery will remedy any ambiguities that may exist in Plaintiffs' claims. Therefore, Defendant's motion for a more definite statement is denied.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 23) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part**, such that the following claims in the Amended Complaint are **DISMISSED**:

(1)     Plaintiffs' ERISA § 503 (29 U.S.C. § 1133) claim in Counts Three and Five;

(2)     Plaintiffs' ERISA § 510 (29 U.S.C. § 1140) claim in Count Two;

(3)     All state law claims that relate to payment on behalf of enrollees in the Federal

         Health Benefit Program;

(4)     Plaintiffs' state law claim for breach of the Covenant of Good Faith and Fair

         Dealing in Count Seven;

(5)     Plaintiffs' state law claim for unjust enrichment in Count Eight; and

(6)     Plaintiffs' state law claim under N.Y. General Business Law § 349; and it is

         further

**ORDERED** that the following claims in the Amended Complaint **SURVIVE**

Defendant's motion:

(1)     Plaintiffs' ERISA § 502(a)(1)(B) (29 U.S.C. § 1132[a][1][B]) claim in Count

         One;

(2)     Plaintiffs' ERISA § 502(a)(3) (29 U.S.C. § 1132[a][3]) claim in Count Two;

(3)     Plaintiffs' ERISA § 404 (29 U.S.C. § 1104) claim in Count Four;

(4)     Plaintiffs' state law claim for breach of contract in Count Six;

(5)     Plaintiffs' state law claim under N.Y. Insurance Law § 3224-A in Count Ten; and

(6)     Plaintiffs' state law claim for tortious interference with prospective economic

         advantage in Count Eleven; and it is further

**ORDERED** that Defendant's motion for a more definite statement (Dkt. No. 23) is

**DENIED**; and it is further

**ORDERED** that Plaintiffs file and serve executed assignments for claims in this action

that they have not yet received within forty-five (45) days of the date of this Decision and Order;

and it is further

**ORDERED** that Defendant file an answer to the Plaintiffs' Amended Complaint within

fourteen (14) days of the date of this Decision & Order pursuant to Fed.R.Civ.P. Rule

12(a)(4)(a),  and this case is referred back to Magistrate Judge Baxter for the setting of pretrial

scheduling deadlines.

Dated:          January 8, 2016
                Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge